Robert Murray and Rhonda Murray, Individually and as Guardians of Erik Murray v. Philip H. White, et al.

[587 A.2d 975]

No. 89-459

Present: Allen, C.J., Gibson and Dooley,[1] JJ., and Peck, J. (Ret.) and Mahady, D.J., Specially Assigned

Opinion Filed January 18, 1991

---

[1] Justice Dooley heard oral argument but took no part in the decision.

*Deborah T. Bucknam,* St. Johnsbury, for Plaintiffs-Appellees.

*Jeffrey L. Amestoy,* Attorney General, and *Geoffrey A. Yudien,* Assistant Attorney General, Montpelier, for Defendant-Appellant.

**Allen, C.J.** Defendant Luba Routsong appeals the trial court's denial of her motion for summary judgment on the state constitutional and tort claims against her. Because we find defendant entitled to summary judgment on the basis of qualified immunity, we reverse.

This litigation stems from the investigation, incarceration, and unsuccessful attempts to criminally prosecute and revoke the conditional pardon of plaintiff, Robert Murray, for the alleged sexual molestation of two minors. Plaintiff, along with his wife and child, initiated the litigation against thirteen individuals, claiming violations of plaintiff's federal and state constitutional rights, as well as the commission of the torts of malicious arrest, false imprisonment, malicious prosecution, abuse of process, and intentional infliction of emotional distress. Defendant is a former caseworker for the Vermont Department of Social and Rehabilitation Services (SRS). The background necessary for disposition of her appeal is sketched below.

On March 13, 1985, a mother telephoned the Vermont Probation and Parole Office in Newport to complain that plaintiff, a neighbor, had sexually molested her two daughters, ages seven and ten. The Probation and Parole Office notified Corporal Leo Willey of the Vermont State Police, who then contacted defendant at the SRS office in Newport. Defendant and Corporal Willey interviewed the mother, father, and the two daughters at the family's home, and took taped statements from the daughters at the state police barracks later that day. In those state-

ments both daughters indicated that they had been sexually molested by plaintiff. Defendant then prepared the daughters for testifying before the Parole Board, and was present at those proceedings on March 29, 1985. The Parole Board, two and a half months later, reported to the Governor that it could not find, by substantial evidence, support for the charge that plaintiff had committed a criminal offense. A notice of dismissal of the criminal charges that had been brought against plaintiff was filed on June 25, 1987.

In his complaint, plaintiff alleges that defendant had undertaken a "one-sided investigation of the fact situation," had purposefully withheld information from psychologists who interviewed the daughters, and had, along with Corporal Willey,

> manipulated [the] interviews with the . . . children on March 13, 1985, conducted them in a highly leading manner, taped only those portions of the interviews that were damaging to Mr. Murray and stopped the tape for portions of the interviews that tended to show that Mr. Murray had not molested the girls, and in transcribing the tapes altered words and meanings to the detriment of Mr. Murray.

Further, plaintiff contends that because of defendant's prior contacts with the alleged victims' family and the resulting knowledge that the family contained, and associated with, known child molesters, defendant knew, or should have known, that the allegations against plaintiff were false and should have conducted a more in-depth investigation of the allegations.

Defendant moved for judgment on the pleadings, arguing that plaintiff had failed to state a claim upon which relief could be granted, and, in any event, that defendant was protected from liability by the doctrine of qualified immunity. Defendant subsequently filed a motion for summary judgment with an accompanying affidavit by defendant, which denied some of the allegations in plaintiff's complaint.

The trial court heard oral argument on defendant's two motions. The court denied defendant's motion for judgment on the pleadings. The court granted defendant's motion for summary judgment as to the federal constitutional claims against her on the grounds that plaintiff had failed to establish that defendant had performed an act that operated to deprive plaintiff of his

federal constitutional rights. The court denied defendant's motion as to the state constitutional and tort claims, stating that there were material facts in dispute, and that there had not been an adequate time for discovery.

Defendant's motion for reconsideration of this ruling was denied. Defendant then filed with the court a notice of appeal as of right, or in the alternative, a motion for permission to appeal.[2] Such permission was denied, leaving this appeal based on appealability as of right.

## I.

As a threshold matter, we must determine whether the denial of defendant's motion for summary judgment premised on qualified immunity falls within the collateral order exception adopted by this Court in *State v. Lafayette*, 148 Vt. 288, 290–91, 532 A.2d 560, 561 (1987). We note first that such a determination is obligatory for this Court. Our appellate jurisdiction over the instant appeal is dependent upon the appeal falling within the collateral order exception. See *Hospitality Inns v. South Burlington R.I.*, 149 Vt. 653, 656–57, 547 A.2d 1355, 1358 (1988). The fact that the nonmoving party does not object to our appellate jurisdiction, or even affirmatively supports it, is not sufficient to confer it. *Murphy Motor Sales, Inc. v. First National Bank of St. Johnsbury*, 121 Vt. 404, 406, 159 A.2d 94, 96 (1960) (when lack of jurisdiction appears "we do not wait for parties to object, but this Court must act of its own motion"); see, e.g., *Chicago & North Western Transportation Co. v. Ulery*, 787 F.2d 1239, 1240 (8th Cir. 1986) ("Although all parties join in urging us to accept th[e] position [that the issue of qualified immunity is immediately appealable], we must still examine it for ourselves, as it concerns our own subject-matter jurisdiction.").[3]

In *Lafayette* we adopted the collateral order exception to the finality rule announced in *Cohen v. Beneficial Industrial Loan*

---

[2] Our procedural rule governing collateral final order appeals, V.R.A.P. 5.1, effective May 1, 1989, was adopted after the filing of the notice in the instant appeal.

[3] If an appeal fell within the collateral order exception simply because both parties labelled it as such, or one party failed to object to it as such, the exception would become the rule, effectively eviscerating our finality requirement. See *In re Pyramid Co.*, 141 Vt. 294, 300–01, 449 A.2d 915, 918 (1982).

*Corp.*, 337 U.S. 541, 546–47 (1949). We took the requirements of the exception to be those stated in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978): "[T]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." In *Mitchell v. Forsyth*, 472 U.S. 511 (1985), the Supreme Court held that a trial court's denial of a claim of qualified immunity met these requirements, and we agree with this determination.

■ The linchpin of the Supreme Court's opinion in *Mitchell* was the perception that qualified immunity "is an *immunity from suit* rather than a mere defense to liability." *Id.* at 526 (emphasis in original). Qualified immunity in this state is in accord with this perception. It is an attempt to balance redress for the wronged with the fact that public officials must be allowed the freedom necessary to perform their obligations. As was made evident in *Levinsky v. Diamond*, 151 Vt. 178, 198–99, 559 A.2d 1073, 1087 (1989), this freedom is threatened not just by ultimate liability, but also by the very necessity of litigating the claim. In adopting the objective good faith test enunciated in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), for determining whether a public official is entitled to qualified immunity, *Levinsky* quoted with approval *Harlow*'s statement that:

> "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. . . .
>
> Reliance on the objective reasonableness of an official's conduct . . . [should] permit the resolution of many insubstantial claims on summary judgment."

*Levinsky*, 151 Vt. at 190, 559 A.2d at 1081–82 (quoting *Harlow*, 457 U.S. at 817–18). A subjective test, by contrast, would mean that a material issue of fact would almost always be present, precluding summary judgment and "forcing lower-level state employees to undergo, at the very least, extensive discovery and motion practice in defending their actions. It is not in the public interest to expose state employees to the distraction and expense of such litigation." *Id.* at 199, 599 A.2d at 1087. The desire in *Levinsky* to promote summary judgment resolution of qualified immunity claims is consistent with the perception that

qualified immunity is indeed an immunity from the suit itself, not just a defense to ultimate liability.

Viewing qualified immunity as an immunity from suit, the issue of whether the denial of qualified immunity meets the requirements of the collateral order exception is more readily resolved. It is clear that the denial of qualified immunity is "effectively unreviewable on appeal from a final judgment," because immunity from suit is necessarily lost in reaching final judgment. *Mitchell*, 472 U.S. at 525–27. It is also clear that the denial of qualified immunity "conclusively determines the disputed question," because immunity from suit is conclusively determined by the denial. *Id.* at 527. And while it is not as clear that the denial of qualified immunity "resolves an important issue completely separate from the merits of the action," we concur in the Supreme Court's conclusion that it does. *Id.* at 527–29.

As the Supreme Court stated in *Mitchell*,

it follows from the recognition that qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct that a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated.

*Id.* at 527–28. Qualified immunity attaches to public officials who are (1) acting during the course of their employment and acting, or reasonably believing they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial, acts. *Levinsky*, 151 Vt. at 185, 559 A.2d at 1078. Inquiry into the first and third criteria is obviously separate from the substantive inquiry into whether plaintiff's rights have been violated. Further, the good faith inquiry is separate in that it too does not ask whether plaintiff's rights have been violated, but rather whether clearly established law exists, and only then whether defendant's conduct transgressed such law. *Mitchell*, 472 U.S at 528; see also *Wright v. South Arkansas Regional Health Ctr., Inc.*, 800 F.2d 199, 202–03 (8th Cir. 1986) (summary judgment immediately appealable even where premised on lack of evidence rather than lack of clearly established law). Finally, we note the inconsistency that would result if our adoption in *Levinsky* of an objective

inquiry into good faith, intended to preserve immunity from suit itself, was interpreted as a bar to immediate appellate review of a trial court's denial of such immunity.

■ Accordingly, we find that defendant's appeal from the partial denial of her summary judgment motion premised on qualified immunity is properly before us.

## II.

■ Summary judgment is appropriate only where the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. *Gore v. Green Mountain Lakes, Inc.*, 140 Vt. 262, 264, 438 A.2d 373, 374 (1981); V.R.C.P. 56(c).

## A.

In ascertaining whether a genuine issue of fact exists, the nonmoving party is to be given the benefit of all reasonable doubts and inferences. *Pierce v. Riggs*, 149 Vt. 136, 139, 540 A.2d 655, 657 (1987). This does not mean, however, that the opponent to a summary judgment motion may simply rest on allegations in the pleadings to defeat the motion. *Gore*, 140 Vt. at 266, 438 A.2d at 375; V.R.C.P. 56(e). The allegations must have sufficient support in specific facts to create a *genuine* issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

■ As concerns defendant's alleged conduct, there is no genuine issue of material fact. The thrust of plaintiff's complaint against defendant is that she did not conduct a sufficiently thorough investigation given her knowledge of other instances of sexual molestation of family members, and that the investigation she did do was conducted in a manipulative manner. There is no dispute that defendant, at the time the allegations arose against plaintiff, knew that a stepdaughter had been sexually molested by the father in the family and that the family had associated with alleged and convicted sexual molesters. Her investigation of the allegations did not go beyond interviewing the family, taking taped statements from the two alleged victims, and learning that plaintiff was a convicted murderer. As to the taking of the statements, some leading

questions were asked by Corporal Willey. There was a break taken during one of the statements, during which plaintiff alleges that the witness's memory was "corrected," an inference which we will accept as true. Plaintiff alleges in his complaint that in the transcription of the statements, words and meanings were altered to his detriment. Defendant denied this in an affidavit, and plaintiff has not presented any evidence to support the allegation. Accordingly, this allegation does not create a genuine issue of fact. See *Gore*, 140 Vt. at 266, 438 A.2d at 375.

Defendant prepared the daughters for their testimony before the Parole Board. There is no dispute as to her actions during those proceedings, as a record of them is before us. During those proceedings defendant asked one leading question, requested a break and that the mother be brought in when one of the daughters did not respond in accordance with her tape-recorded statement, and did not correct a misstatement by the same daughter. As to plaintiff's allegation that defendant deliberately withheld information from a doctor who interviewed the daughters, defendant in her affidavit states that she had left SRS prior to the time of the interview, and plaintiff has pointed us to no specific facts that indicate otherwise. Plaintiff's final allegations, concerning defendant's deposition testimony in 1987, are without sufficient support in specific facts to create a genuine issue.

### B.

Defendant is entitled to summary judgment if, as a matter of law, she is entitled to qualified immunity on the basis of these facts. We hold that she is. As stated earlier, defendant is entitled to qualified immunity if she was (1) acting during the course of her employment and acting, or reasonably believing she was acting, within the scope of her authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial, acts. *Levinsky*, 151 Vt. at 185, 559 A.2d at 1078. Plaintiff has not attempted to argue that defendant was acting outside her employment and outside the scope of her authority, or that defendant was performing a ministerial, as opposed to discretionary, act. Nor would any such argument be successful. The issue that is contested is whether defendant was acting in good faith as measured by the objective standard adopted in *Levinsky*.

■ Good faith exists where an official's acts did not violate clearly established rights[4] of which the official reasonably should have known. *Levinsky*, 151 Vt. at 190, 559 A.2d at 1082 (adopting *Harlow*). This good faith inquiry does not ask whether plaintiff's rights were violated, but rather whether the official reasonably should have known that what she was doing violated plaintiff's rights. See *Harlow*, 457 U.S. at 818 (good faith depends "on the objective reasonableness of an official's conduct, as measured by reference to clearly established law"). As such, a lack of good faith is not established by asserting that the right to be free from the torts alleged in plaintiff's complaint is clearly established. Rather, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [I]n the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted).

Plaintiff has failed to show that defendant should reasonably have known that her acts violated plaintiff's rights. We have been pointed to no clearly established law,[5] nor have we found any, which should have made it known to defendant that her

---

[4] The good faith inquiry in a § 1983 suit asks whether an official's acts violated clearly established "statutory or constitutional rights" of which the official reasonably should have known because § 1983 provides a remedy only for violations of federal constitutional and statutory law. See *Owen v. City of Independence*, 445 U.S. 622, 649 (1980) (§ 1983 requires inquiry into whether defendant "has conformed to the requirements of the Federal Constitution and statutes"); *Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."). Qualified immunity from a state law claim does not contain the "statutory or constitutional rights" limitation because a state law claim is not so limited. Qualified immunity from tort liability will not be made to depend upon whether the tort has been codified. Accordingly, the "statutory or constitutional" limitation is not part of qualified immunity from state law claims.

[5] Plaintiff has pointed us to only two cases: *In re Scott County Master Docket*, 618 F. Supp. 1534 (D. Minn. 1985), and *Melson v. Bristow*, No. 86-122 (D. Vt. 1986). The first observation is that both were decided after all of defendant's acts had occurred, excepting her deposition in 1987. The second observation is that neither comes close to creating clearly established law in plaintiff's favor. *In re Scott*, which rejected qualified immunity for social workers in defendant's position who carried out acts similar to those carried out by defendant, was squarely reversed in all respects pertinent to defendant by *Myers v. Morris*, 810 F.2d 1437 (8th Cir. 1987). It is thus hard to consider it as having created clearly established law. *Bristow* was unpublished and is substantively contrary to the point plaintiff is trying to assert.

acts violated plaintiff's rights.[6] Defendant received a call from Corporal Willey, informing her of the mother's report that her minor daughters had been sexually molested by plaintiff. In conformity with 33 V.S.A. § 4915 (formerly 33 V.S.A. § 685) (SRS "shall cause an investigation to commence within seventy-two hours after receipt of a report"), defendant immediately undertook an investigation. In her investigation, defendant interviewed the family at their home, and assisted in taking taped statements from the alleged victims. This investigation was in compliance with the statute, which provides, in part, that

> (b) The investigation, to the extent that it is reasonable, shall include:
>
> (1) A visit to the child's place of residence or place of custody and to the location of the alleged abuse or neglect;
>
> (2) An interview with, or observance of the child reportedly having been abused or neglected. . . .

§ 4915(b). The extent of defendant's investigation was also fully consistent with the SRS Policy Manual, which provides, in part:

> *Sources of Information*
>
> Most information will come from the individual or family and other persons directly involved. Contacts shall include the person complaining, and the family concerned. Individual interviews with family members, including the children whenever appropriate or feasible, are desirable, as well as joint interviews with the family group.

---

[6] Plaintiff asserts that defendant's good faith should not be determined by viewing defendant's acts in isolation, but rather as "in concert" with the acts of the other defendants. Plaintiff's assertion, whether premised on conspiratorial liability or joint tort liability, fails in this case. Unsupported allegations of conspiratorial purpose are as ineffective in piercing the objective standard of good faith as are unsupported allegations of subjective bad faith. *Myers v. Morris*, 810 F.2d at 1453. The fact that the professional responsibilities of each defendant brought them into contact with the case against plaintiff does not alone support allegations of conspiracy amongst them. Nor do we think that this fact alone should require that defendant's good faith be determined by the acts of the other defendants under a theory of joint tort liability. To so require would undermine the very purpose of qualified immunity—allowing an official to act without fear of suit unless she should know that what she is doing is in violation of clearly established rights—because it would impose on an official a fear of suit caused by acts of another about which the official might not even know.

Collateral sources shall be used selectively, as indicated by the situation. . . .

SRS, Agency of Human Services, Social Services Policy Manual § 2019.3 (1982). Further, it is undisputed that both of the alleged victims in their statements indicated that they had been sexually molested by plaintiff.

■ The fact that defendant's investigation was in compliance with statutory requirements, combined with an inability to find any clearly established law that imposed on defendant an obligation to investigate further, compels the conclusion that the extent of defendant's investigation was in good faith. Defendant should not have reasonably known that she was obligated to investigate any further than she did. In addition, defendant should not have reasonably known that the manner of her investigation violated plaintiff's rights. The law surrounding the taking of statements from suspected minor sexual abuse victims, and the amount of assistance which can be given them in preparation for trial, was not, and is not, so clearly established that defendant reasonably should have known that her acts violated plaintiff's rights. See *Myers v. Morris*, 810 F.2d 1437, 1459–61 (8th Cir. 1987).

We adopted *Harlow*'s objective test of good faith in an effort to strike the proper balance between allowing redress for the wronged and allowing "public officials the freedom necessary to perform their obligations without fear of retaliation." *Levinsky*, 151 Vt. at 199, 559 A.2d at 1087. In this balance, officials should fear suit only where they reasonably should know that suit is warranted, i.e., where the unlawfulness of their acts is apparent. Subjecting defendant to suit here would be to ignore this balance. More devastating than the injustice this would work on defendant is the chilling effect this would have on officials charged with the difficult task of investigating child abuse. Accordingly, we reverse the trial court's denial of defendant's motion for summary judgment as to the state constitutional and tort claims and remand with directions that summary judgment be entered for defendant on all claims remaining against her.

*Reversed and remanded.*