Richard **BILLADO**, Plaintiff,

v.

Jeffrey **PARRY**, Christopher Jones, and Gardener Manosh, Defendants.

No. 2:95–cv–69.

United States District Court, D. Vermont.

July 18, 1996.

Beth Robinson, Langrock, Sperry & Wool, Middlebury, VT, for Richard Billado.

Pietro J. Lynn, Dinse, Erdmann, Knapp & McAndrew, Burlington, VT, for Jeffrey A. Parry, Christopher Jones and Gardner Ma-

nosh, individually and in their official capacity.

## OPINION AND ORDER

SESSIONS, District Judge.

This is a 42 U.S.C. § 1983 civil rights action filed by plaintiff Richard Billado against Sheriff Gardner Manosh, Deputy Jeffrey Parry, and Deputy Christopher Jones, of the Lamoille County Sheriff's Department. Billado claims that when he was in the custody of Deputies Parry and Jones, he was assaulted by another man, and that the deputies failed to protect him from this assault in violation of his constitutional rights under the Eighth and Fourteenth Amendments. Billado also claims violations of the Vermont Constitution, intentional infliction of emotional distress, misfeasance, and neglect of duty as a result of this assault.

Defendants Smith, Parry, and Manosh filed motions for summary judgment as to all claims under Fed.R.Civ.P. 56. After reviewing Billado's timely opposition, the Court grants summary judgment for the claims of assault and battery and intentional infliction of emotional distress. The Court denies summary judgment for the § 1983 claim, as well as the misfeasance and neglect of duty claims. The Court grants in part and denies in part summary judgment for the claims of violations under the Vermont Constitution.

## FACTUAL BACKGROUND

While driving on routine patrol the evening of March 21, 1992, Deputy Jones and Deputy Parry were approached by an extremely agitated driver of another car, Ernest Oliver. Oliver told the deputies that he was driving around searching for Richard Billado, a man currently living with Oliver's family, because he had reason to believe that Billado had molested Oliver's daughters. Oliver described Billado as about six feet in height, weighing approximately 300 pounds. The deputies told Oliver that they had recently seen a man matching Billado's description in the vicinity of Oliver's home. Oliver stated that he wanted Billado arrested for sexually abusing his daughters.

The first altercation between Oliver and Billado occurred when Oliver returned home, with the deputies following him in their squad car, and discovered Billado seated in a car in Oliver's driveway. Upon sighting Billado, Oliver got out of his car, ran to the parked car, pulled Billado out of the driver's seat, and began to beat upon his chest.

The record is unclear as to whether the two deputies exited their car when Oliver began to attack Billado, although they were present during this first altercation. The record is also unclear as to how this altercation subsided. Somehow Billado and Oliver separated, Parry escorted Oliver inside his house and Jones stayed outside with Billado.[1]

Billado states that before Parry took Oliver inside the house, the deputy instructed Billado to remain where he was, and told Jones to stay with him. This gave Billado the impression that he had been "arrested at the spot" (Billado Dep. ¶ 5), and that he was not at liberty to leave the Oliver residence.

While Parry and Oliver were inside the house, Billado claims that he had a conversation with Jones in which Jones told him not to get into his car. Jones states that his only discussion with Billado occurred when Billado asked him what was going to happen, to which Jones replied that he would not know until Parry returned from the house. Billado claims that he would have fled the scene or locked himself in his car while Parry and Oliver were in the house, if not for Parry and Jones's instructions.

Once inside the house, according to Parry, Parry briefly interviewed the daughters about the alleged molestation. The daughters, aged two and twelve, told Parry that Billado had sexually abused them on several occasions. After hearing his older daughter speak graphically of specific instances of sexual abuse by Billado, Oliver ran out of the house to where Billado was standing next to Jones. He grabbed Billado's shirt and shook him back and forth.

---

1. Billado initially claimed that the deputies stood by and permitted Oliver to attack him without intervening. He later admitted that the testimony in which he stated this claim was incorrect and that he separated from Oliver so quickly that he had no recollection of what caused them to be separated. The deputies maintain that they quickly separated Billado and Oliver.

Billado claims that the deputies failed to protect him from this second assault, which lasted ten to fifteen minutes. Neither Jones, who was standing next to Billado, nor Parry, who had followed Oliver outside, intervened. Billado claims that both deputies stood by and watched the assault, telling him only to get into the squad car when Billado asked for help. Eventually Billado and Oliver separated by themselves. Conversely, the deputies maintain that they quickly intervened and separated the two men.

Billado claims that after he pulled Oliver off him and attempted to walk to the squad car, Oliver pursued him and tried unsuccessfully to push him down. Parry opened the squad car door for Billado and Billado sat in the front passenger seat. As soon as he got inside the car, Billado began to experience chest pains. He ingested a nitroglycerin pill and was eventually taken to the hospital by ambulance for treatment.

## DISCUSSION

Summary judgment shall be granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material when it affects the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is a genuine dispute over a material fact when the evidence requires a factfinder to resolve the parties' differing versions of the truth at trial. *Id.* at 249, 106 S.Ct. at 2510 (citing *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)). "Uncertainty as to the true state of any material fact defeats the motion." *Gibson v. American Broadcasting Cos., Inc.*, 892 F.2d 1128, 1132 (2d Cir.1989).

In analyzing the record, the court must view the evidence in the light most generous to the nonmoving party and resolve all ambiguities in its favor. *Dister v. Continental Group Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988). The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those parts of the record which demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the nonmovant may not rely on conclusory allegations or mere conjecture, but rather must offer specific facts to support a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (construing Fed.R.Civ.P. 56(e)). As to any claim, or essential element thereof, for which the nonmoving party bears the burden of proof at trial, the nonmoving party must make a showing sufficient to establish the existence of that claim or element. *Celotex*, 477 U.S. at 322–25, 106 S.Ct. at 2552–54.

### I. 42 U.S.C. § 1983 Claim

Plaintiff charged that Deputy Jones, Deputy Parry, and Sheriff Manosh deprived him of rights under the United States Constitution, including the Fourteenth Amendment right to due process and to be free from use of excessive force and the Eighth Amendment right to be free from cruel and unusual punishment, in violation of 42 U.S.C. § 1983. Defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56, asserting that there is no cognizable § 1983 claim, and even if facts are proven to support a § 1983 claim, that they are entitled to qualified immunity.

Section 1983 allows an individual to bring suit against persons who, under color of state law, have caused him or her to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. It is well established that in order to maintain a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable to a person acting under color of state law; and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See, e.g., Rendell–Baker v. Kohn*, 457 U.S. 830, 835, 102 S.Ct. 2764, 2768, 73 L.Ed.2d 418 (1982); *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct.

662, 88 L.Ed.2d 662 (1986); *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980).

■ Under "color of law" for the purposes of § 1983 actions means "under pretense of law." *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945). The deputies do not dispute that they were acting under pretense of law when interacting with Billado. They were in uniform, on duty, and acting in their official capacity as deputies of Lamoille County Sheriff's Office.

■ At issue in the present motion, however, is whether the deputies violated the Constitution or federal law during the altercation between Billado and Oliver. As a general rule, a state's failure to protect an individual against private violence does not equal a constitutional violation. *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 197, 109 S.Ct. 998, 1004, 103 L.Ed.2d 249 (1989). However, in *DeShaney,* the Supreme Court did acknowledge that when the state holds a person in custody, or otherwise restrains a person's liberty, the state assumes some corresponding duty to provide for the person's safety and general well-being:

> [T]he affirmative duty to protect arises … from the limitation which it has imposed on his freedom to act on his own behalf…. it is the State's affirmative act of restraining an individual's freedom to act on his own behalf … which is the "deprivation of liberty" triggering the protections of the Due Process Clause….

489 U.S. at 200, 109 S.Ct. at 1005–06.

■ Courts have adhered to the *DeShaney* exception where the state has created a custodial or special relationship between the state and the individual harmed, by finding that prisoners must be protected from violence by other prisoners, *see, Ayala Serrano v. Lebron Gonzalez,* 909 F.2d 8, 14 (1st Cir. 1990); and that arrestees must be protected from attack by third parties, including police officers, *see, Diebitz v. Arreola,* 834 F.Supp. 298, 304 (E.D.Wis.1993).

■ The Second Circuit has recognized an additional exception to the general rule established in *DeShaney* by finding an affirmative duty on the part of the state to provide protective services where the state has put an individual in danger and then failed to protect him or her. *Dwares v. City of New York,* 985 F.2d 94, 99 (2d Cir.1993). The District of Vermont has similarly recognized this exception in *Thayer v. Herdt,* No. 86–88, slip. op. at 11 (D.Vt. Apr. 4, 1988). *See also, Brooks v. Giuliani,* 84 F.3d 1454, 1467 (2d Cir.1996); *Freeman v. Ferguson,* 911 F.2d 52, 54–55 (8th Cir.1990); *Wood v. Ostrander,* 879 F.2d 583, 590 (9th Cir.1989); *White v. Rochford,* 592 F.2d 381, 385 (7th Cir.1979).

■ Accordingly, if the deputies created a custodial relationship with Billado, or if by their actions they enhanced his vulnerability to attack, the deputies may have violated a duty to protect if they stood by during the attacks on Billado. The circumstances surrounding the assaults on Billado demonstrate three areas of material facts in dispute: first, whether the deputies had a custodial relationship with Billado requiring that they protect him; second, absent a custodial relationship, whether the deputies' actions increased Billado's vulnerability to harm; and third, in either circumstance, whether the deputies failed to protect Billado from assault.

Billado claims that after the first assault, he was effectively placed in the deputies' custody when he was instructed not to leave the area and not allowed to get into his car to protect himself. Consequently, because he was in their custody, the deputies had a duty to protect him from Oliver's second assault.

Alternatively, Billado argues that even if he was not in the custody of the deputies, they effectively increased his vulnerability to harm by helping an agitated man locate and subsequently attack him. Billado states that by increasing his vulnerability to attack, the deputies created an affirmative obligation to protect him from Oliver's attack.

On the contrary, the deputies state that Billado was never placed in their custody while at the Oliver residence because he was never given any instructions not to leave the area, nor prohibited from getting into his car. Moreover, the deputies contend that by following Oliver to his home they did not in-

crease Billado's vulnerability to harm, because they did not place Billado in a position of danger that he would not otherwise have faced. The deputies also maintain that they promptly intervened during both the attacks upon Billado in order to protect him.

There is thus a factual dispute over whether the deputies had a custodial relationship with Billado and failed to protect him, or whether the deputies created a danger to Billado and failed to protect him. Because there is a material factual dispute, the issue is not suitable for summary judgment.

 The deputies argue that even if their relationship with Billado was custodial, or if they increased his vulnerability to attack, the doctrine of qualified immunity shields them from civil liability. Qualified immunity attaches where (1) a public official acted within the scope of his duties; (2) the public official's alleged improper conduct was discretionary; and (3) the public official acted in good faith. *Napolitano v. Flynn,* 949 F.2d 617, 622 (2d Cir.1991).

Billado does not dispute that the deputies were acting within the scope of their duties as police officers or that their conduct was discretionary. However, Billado does contest that the officers were acting in good faith.

It is well established within the Second Circuit and the District of Vermont that government officials may be shielded from liability for civil damages as long as they were acting in good faith: "Essentially, if it is objectively reasonable for an official to believe that he or she is acting within constitutional and statutory bounds, the official will be insulated from the liability stemming from his or her conduct." *Natale v. Town of Ridgefield,* 927 F.2d 101, 104–05 (2d Cir. 1991). The District of Vermont has similarly reviewed the doctrine defining good faith as "conduct not violat[ive of] clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilkinson v. Balsam,* 885 F.Supp. 651, 660 (D.Vt.1995) (quoting *Wyatt v. Cole,* 504 U.S. 158, 166, 112 S.Ct. 1827, 1832, 118 L.Ed.2d 504 (1992)).

 A good faith determination requires examination of (1) the state of constitutional law at the time of the challenged conduct; and (2) the reasonableness of the official's belief as to the lawfulness of his or her conduct. *Cecere v. City of New York,* 967 F.2d 826, 829 (2d Cir.1992). Therefore, the questions in this case are (1) whether the law governing the deputies' § 1983 responsibilities was clearly established on March 21, 1992; and (2) whether the deputies reasonably believed they were complying with the law at the time of the incident. Billado argues that the deputies' conduct was clearly unlawful in March of 1992 because placing Billado in a dangerous situation or taking him into custody, without protecting him from assault, was a clear violation of well-established federal law regarding the special duties of a state to protect the well-being of persons under its control.

The deputies do not dispute that the law governing their § 1983 duties was clearly established on March 21, 1992. Rather, the deputies argue that they are entitled to summary judgment based on qualified immunity because they reasonably believed they were complying with the law at the time of the incident.

Because there is a factual dispute relating to whether or not the deputies had increased Billado's vulnerability to harm or taken him into custody and then failed to protect him, it is impossible to determine whether or not they were acting in good faith under the laws surrounding § 1983. Because there is a factual dispute, the issue is not suitable for summary judgment. Therefore, the Motion for Summary Judgment as to this Count must be denied.

## II. *Assault and Battery*

 Count II of Billado's complaint seeks damages for Parry and Jones's material participation in and encouragement of an attack upon Billado. At common law, the civil tort of assault is defined as "any gesture or threat of violence exhibiting an attention [sic] to assault, with the means of carrying that threat into effect ... unless immediate contact is impossible." *Bishop v. Ranney,* 59 Vt. 316, 318, 7 A. 820 (1887). Intent is an essential element of civil assault as well: "If a party threatening the assault [has] the

ability, means, and apparent intention, to carry his threat into execution, it may in law constitute an assault." *Wilson v. Smith*, 144 Vt. 358, 360, 477 A.2d 964 (1984) (citing *Clark v. Downing*, 55 Vt. 259, 262 (1882)).

Billado originally claimed that the defendants materially participated in and encouraged an attack upon him. However, no facts were ever set forth by Billado to support material participation or encouragement by the deputies. In fact, Billado testified in his deposition to the contrary, that the deputies did not encourage or participate in the attack upon him.[2]

Because Billado has denied the elements of the tort in his deposition and has failed to assert adequate facts to establish assault and battery, there are no facts in dispute as to this Count to withstand the defendants' Motion for Summary Judgment. Therefore, the Motion for Summary Judgment as to this Count is granted.

### III. *Intentional Inffiction of Emotional Distress*

Count III of Billado's complaint seeks damages for the tort of intentional infliction of emotional distress. To prevail on this claim under Vermont law, Billado has the burden of proving "outrageous conduct, done intentionally or with reckless disregard for the probability of causing distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *McHugh v. University of Vt.*, 758 F.Supp. 945, 949 (D.Vt. 1991) (citing *Crump v. P & C Food Markets, Inc.*, 154 Vt. 284, 296, 576 A.2d 441 (1990));

*Sheltra v. Smith*, 136 Vt. 472, 475–76, 392 A.2d 431 (1978).

Billado has not met the burden required to establish intentional infliction of emotional distress because he has affirmatively set forth no material facts in the form of affidavits or sworn testimony to support his claim. Even if facts were set forth by Billado to support the claim, the conduct allegedly causing emotional distress would not rise to the requisite level of outrageousness to support the tort.

It is disputed whether the deputies stood by and watched the second assault upon Billado, or whether the deputies intervened. At worst, Oliver assaulted Billado because he believed Billado has molested his children, and the two briefly scuffled and broke apart without interference by the deputies. Even if the deputies stood by and observed the altercation, this conduct does not rise to the level of outrageous conduct necessary to support a claim of intentional infliction of emotional distress.

Because Billado fails affirmatively to set forth facts to support his intentional infliction of emotional distress claim, and because the deputies' conduct at worst was not outrageous for purposes of an intentional infliction of emotional distress claim, Summary Judgment as to this Count is therefore Granted.

### IV. *Violations of Vermont Constitution*

Count IV of Billado's complaint seeks damages for violation of his rights under Chapter I, Articles 4, 6, 9 and 10 of the Vermont Constitution. Defendants cite *Shields v. Gerhart*, 163 Vt. 219, 658 A.2d 924 (1995), for the proposition that the Vermont Constitu-

---

**2.** In his deposition, the following conversation took place:

Q. All right. Well let me break it down for you. Did Parry or Jones ever encourage Ernie Oliver to attack you?
A. No.
Q. All right. So that would be a lie, right, if somebody were to testify that they encouraged Ernie Oliver to attack you, correct?
A. Correct.
Q. Did they ever participate in the assault on you?
A. No.
Q. No. So that also would be a lie, correct?
A. Correct.
Q. Have you told anyone besides your attorney that they participated in the assault or encouraged it?
A. No, that would be a lie.
Q. You also say in paragraph 13 that Parry and Jones materially participated and encouraged an attack on plaintiff, you, Mr. Billado. That's also untrue, correct?
A. That's untrue.
Q. And it would be a lie if someone were to say that under oath, correct?
A. Guess so.
Q. It would be a lie, wouldn't it, sir?
A. Probably would, yes.
(Billado Dep. ¶¶ 129–131.)

tion does not provide for private causes of action. That reading of *Shields* is too broad. However, for the reasons stated below this Court finds that Billado does not have a private right of action under Articles 4, 6, and 9, and that the current record is inadequate to determine whether a private action for money damages under Article 10 is available to him.

■ The Vermont Supreme Court has held that no private right of action is available to enforce Articles 4 and 6 of Chapter I of the Vermont Constitution. *Rowe v. Brown*, 157 Vt. 373, 599 A.2d 333 (1991); *Welch v. Seery*, 138 Vt. 126, 411 A.2d 1351 (1980). Therefore, Billado may not maintain a damage action against Defendants under Article 4 or 6.

■ Chapter I, Article 9 of the Vermont Constitution involves the state's power to tax and to require its citizens to "yield personal service when necessary" in the protection of "life, liberty, and property." This Court can discern no connection between this article and any loss or deprivation alleged in the Complaint, and none has been offered. Summary judgment is appropriate.

To determine whether Article 10 affords a private right of action, this Court is guided by the Vermont Supreme Court's analysis in *Shields*. In that case, the Vermont Supreme Court considered whether Articles 1 and 13 of Chapter I of the Vermont Constitution afforded a private right of action for money damages. It conducted a two part analysis. First, it considered whether the constitutional provisions involved were self-executing, that is, whether an action could be supported without implementing legislation. Second, if the provision was determined to be self-executing, it considered whether money damages were available as a remedy for a violation. *Shields*, 658 A.2d at 927.

To determine whether a provision was self-executing, the Court stated it would consider whether the provision described the right in detail, rather than expressing only general principles; whether the provision directed the legislature to take additional action to safeguard the right; whether the legislative history of the provision offered guidance; and "whether a decision for or against self-execution would harmonize with the scheme of rights established in the constitution as a whole." *Id.* at 928.

The Vermont Supreme Court concluded that Article 1, which guarantees "certain natural, inherent, and unalienable rights," was not self-executing, because it merely expressed fundamental, general principles. *Id.* It found that Article 13, which guarantees freedom of speech, was self-executing, however, because it set forth a single, specific right, in the absence of a legislative directive, "that is crucial to the operation of government and vital to the effectuation of other enumerated rights." *Id.* at 930. Nonetheless, it concluded that the plaintiff could not pursue a suit for money damages because she had an adequate administrative remedy for her loss. *Id.* at 936.

■ Article 10 of Chapter I of the Vermont Constitution enumerates rights of persons accused of crimes and guarantees due process of law to all. Article 10 is self-executing; it sets forth specific rights, has no legislative directive, and the ability to seek redress for infringements of Article 10 "comports with the general constitutional scheme." *Id.* at 930. Whether under the circumstances alleged in Billado's complaint monetary damages should be permitted to remedy a breach of a right under Article 10 is impossible to answer on the current record, however. Defendants have not presented the Court with any basis for concluding that an alternative remedial scheme is adequate, should a violation be found. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion ..." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

Because Defendants have not sustained their burden on the question of whether Article 10 affords a private right of action under the circumstances presented in this complaint, summary judgment is denied at this time as to Article 10. Summary judgment is granted as to Plaintiff's claims of violations of Articles 4, 6, and 9.

### V. *Misfeasance and Neglect of Duty*

Count V of Billado's complaint seeks damages for misfeasance and neglect of duty by Sheriff Manosh for the actions of Deputies Parry and Jones pursuant to 24 V.S.A. 304, which provides: "[a]ctions for official misfeasance or neglect of a deputy sheriff, or for cause affecting his administration of the office, shall be sustained only against the sheriff; but the sheriff shall not be amenable criminally for the conduct of his deputy, other than for fines for neglect of duty." 24 V.S.A. § 304.

 Sheriff Manosh claims that he cannot be held liable for the negligent actions of his deputies because they are protected by qualified immunity, and he is protected by official immunity. Official immunity, like qualified immunity, only shields a public official from civil liability if (1) he acted during the course of his employment; (2) he performed in a discretionary function; and, (3) he acted in good faith. *Murray v. White*, 155 Vt. 621, 629, 587 A.2d 975 (1991). Therefore, if the deputies working under his direction satisfied the *Murray* test discussed under Count I for qualified immunity, then the claims against Sheriff Manosh would likewise have to be dismissed.

Because the claims against Sheriff Manosh rely upon the performance of the deputies, the same issues pertain to this Count as were examined under the qualified immunity doctrine. If qualified immunity does not insulate the deputies, and the deputies are found liable, misfeasance and neglect of duty may be sustained against Sheriff Manosh. However, because material facts remain in dispute as to whether Billado was ever in the custody of the deputies; whether Billado's liberty was restricted; whether the deputies created a danger to Billado from which they failed to protect him; and whether the deputies were acting in good faith, the Motion for Summary Judgment as to this Count must be denied.

### CONCLUSION

Defendants' Motion for Summary Judgment is DENIED as to Counts I and V. The Motion is GRANTED as to Counts II and III. The Motion is GRANTED in part and DENIED in part as to Count IV.