2013 VT 117




Baptie
v. Bruno and McNeil (2013-003)


 


2013 VT 117


 


[Filed 6-Dec-2013]


 


NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.


 


 



 
 2013 VT 117

 

  



 
 No. 2013-003

 

  



 
 Thomas R. Baptie
 and Mary L. Baptie, Individually 

 
 and as Administrators of the Estate of John Baptie

 

 
 
 Supreme Court

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 On Appeal from

 

 
 
      v.

 

 
 
 Superior Court, Rutland Unit,

 

 
 
  

 

 
 
 Civil Division

 

 
 
  

 

 
 
  

 

 
 
 Jonathan Bruno and Aron McNeil

 

 
 
 April Term, 2013

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 Mary
 Miles Teachout, J. (Motion for Summary Judgment)

 
 William D. Cohen (Final
 Judgment)

 

 
 
  

 

 Thomas W. Costello and George Anthes
of Costello, Valente & Gentry, P.C., Brattleboro,
for


  Plaintiffs-Appellants.


 


James F. Carroll and Constance Tryon Pell of English,
Carroll & Boe, P.C., Middlebury, for


  Defendant-Appellee.


 


 


PRESENT:   Reiber, C.J., Dooley, Burgess and
Robinson, JJ., and Bent, Supr. J.,


                    
Specially Assigned


 


 


¶ 1.            
BURGESS, J.   Plaintiffs Thomas and Marie Baptie, administrators of the estate of their son, John Baptie, appeal the superior court’s decision granting
defendant Aron McNeil, a former police officer,
summary judgment with respect to their lawsuit alleging that the officer was
liable for the death of their son as the result of his negligent investigation
of their complaint against defendant Jonathon Bruno, the man who murdered their
son four days after they made the complaint.  We agree with the superior
court’s conclusions that defendant is entitled to qualified official immunity
from plaintiffs’ lawsuit and that, in any event, plaintiffs cannot prove all of
the elements of their negligence or intentional infliction of emotional
distress (IIED) claims.  Accordingly, we affirm the superior court’s grant
of summary judgment in defendant’s favor.


¶ 2.            
The record, viewed most favorably to plaintiffs, reveals the following
facts.  On October 28, 2007, defendant Aron
McNeil, a Town of Castleton police officer at the time, responded to Thomas Baptie’s 911 call indicating that
his family had received threatening telephone calls from a person named
Jonathon Bruno, who was angry because plaintiff’s son, John Baptie,
had not paid Bruno money that Bruno believed was owed him.  Thomas
reported that Bruno had threatened to come over and shoot him and his
family.  Defendant went to the Baptie residence
in response to the 911 call.  Thomas was unhappy that a local police
officer, and particularly defendant, responded to his call because of his past
run-ins with the Castleton Police Department and defendant, but defendant told
him that his only option was working with local police.


¶ 3.            
After informing defendant of the threats Bruno had made during three
telephone calls to the Baptie residence that evening,
Thomas played a threatening voicemail message that Bruno had left during the
last telephone call.  John told defendant that he had known Bruno most of
his life and that Bruno had just been released from prison a month or two
earlier.  John also told defendant that he owed Bruno $30 or $40 for
baseball cards and not anything else.  Defendant advised Thomas that he
would call Bruno and tell him to stop calling the Baptie
residence.  He asked Thomas to let him know if Bruno continued to call, in
which case he would consider it harassment by telephone.


¶ 4.            
At that point the telephone rang, and Thomas allowed defendant to answer
it.  Defendant then engaged in a conversation with Bruno, the
caller.  Defendant told Bruno to stop calling the Baptie
residence.  He also tried to obtain personal information from Bruno, but
Bruno was not responsive to questions concerning his identity or
whereabouts.  Defendant told Bruno that he knew Bruno was on probation and
that if he came to the Baptie residence he would be
charged with unlawful trespass.  After the call ended, defendant asked
Thomas to call him if Bruno telephoned again.  Defendant also indicated
that he would charge Bruno with harassment by telephone if he called back.


¶ 5.            
Early the following morning, defendant returned to the Baptie residence after Thomas reported that Bruno had
called again and left a threatening voicemail message on Mary Baptie’s cellphone.  After
Thomas played the message for defendant, defendant informed plaintiff that he
had not yet been able to locate Bruno, but was attempting to do so.  He
also told Thomas that he had just called Bruno “and read him the riot act” but
that Bruno was not listening because he knew that defendant did not yet know
how to locate him.  After defendant informed Thomas that Bruno could be
charged at that point only with harassment by telephone, a misdemeanor, the
parties discussed Bruno’s possible whereabouts, and defendant left the
residence stating that he would continue trying to locate Bruno and would get
back to plaintiffs.


¶ 6.            
That afternoon, October 29, 2007, defendant received information from
the Vermont Fusion Center regarding his recent criminal records request. 
The information identified Bruno, listed an address, and indicated a criminal
history in both Vermont and Texas.  Defendant issued a citation against
Bruno for harassment by telephone, a misdemeanor.  Based on his mistaken
belief that Bruno’s last known address was in the City of Rutland, on or about
October 30, 2007, defendant contacted the Rutland Police Department for
assistance in serving Bruno with the citation.  Rutland police were
unsuccessful in serving the citation at the address provided by
defendant.  Plaintiffs did not receive any more telephone calls from
Bruno, and defendant did not pursue further service of the citation before Bruno
murdered Baptie on November 1, 2007.


¶ 7.            
The murder occurred when John Baptie and Bruno
encountered each other in a parking lot in Rutland.  The two argued, with
Bruno accusing John of calling the police and John accusing Bruno of making threatening
telephone calls to his family.  Bruno invited John to go behind a nearby
store and settle matters.  Unfortunately, John complied, following Bruno
behind the store, where Bruno fatally stabbed him in the neck.


¶ 8.            
In April 2009, plaintiffs filed a wrongful death action against
Bruno.  Six months later, the superior court granted plaintiffs’ motion to
add Aron McNeil as a defendant in his individual
capacity.  Plaintiffs made claims against defendant McNeil premised on
negligence and IIED, seeking both compensatory and punitive damages.  On
August 3, 2012, the superior court granted defendant McNeil’s motion for
summary judgment, ruling that, as a matter of law: (1) plaintiffs could prove
neither duty nor causation with respect to their negligence claim; (2)
defendant was entitled to qualified immunity because the conduct complained of
constituted discretionary acts within the scope of defendant’s official
investigative duties, and plaintiffs could prove neither bad faith nor gross
negligence on defendant’s part; (3) plaintiffs could not show that defendant’s
conduct was so outrageous that he could be found liable for IIED; and (4)
punitive damages were unavailable because defendant was entitled to summary
judgment on all claims of liability.


¶ 9.            
Plaintiffs obtained a default judgment against Bruno in September
2012.  Following a hearing on damages, a final judgment was entered in the
case.  Plaintiffs then appealed the superior court’s summary judgment
ruling in favor of defendant McNeil.  On appeal, plaintiffs argue that the
court erred in ruling that: (1) plaintiffs could not prove the required
elements of negligence or IIED; and (2) defendant was otherwise entitled to
qualified official immunity.


¶ 10.         In
reviewing a summary judgment ruling, we consider de novo whether there are
disputed issues of material fact and whether the moving party is entitled to
judgment as a matter of law.  V.R.C.P. 56(a); Lakeside
Equip. Corp. v. Town of Chester, 173 Vt. 317, 321, 795 A.2d 1174, 1178
(2002).  “Summary judgment is mandated under the plain language of
V.R.C.P. 56(c) where, after an adequate time for discovery, a party ‘fails to
make a showing sufficient to establish the existence of an element’ essential
to his case and on which he has the burden of proof at trial.”  Poplaski v. Lamphere,
152 Vt. 251, 254-55, 565 A.2d 1326, 1329 (1989) (quoting Celotex
Corp. v. Catrett, 477 U.S. 317, 322
(1986)).  In determining whether summary judgment is appropriate, we must
consider record in light most favorable to the nonmoving party.  Chase
v. Agency of Human Servs., 2011 VT 31, ¶ 14, 189
Vt. 613, 19 A.3d 167 (mem.); see Collins v. Thomas,
2007 VT 92, ¶ 6, 182 Vt. 250, 938 A.2d 1208 (stating that all doubts and
inferences are construed in favor of party opposing summary judgment). 
Nevertheless, in opposing summary judgment, the nonmoving party may not “rest
on bare allegations to demonstrate that disputed material facts remain.”  Johnson
v. Harwood, 2008 VT 4, ¶ 5, 183 Vt. 157, 945 A.2d 875; see Baldwin v.
Upper Valley Servs., Inc., 162 Vt. 51, 55, 644
A.2d 316, 318 (1994) (“Opposing allegations must have sufficient support in
specific facts to create a genuine issue of material fact.”). 


¶ 11.         We
first address the superior court’s ruling that defendant is entitled to
qualified official immunity under the circumstances of this case.[*]  “Qualified immunity attaches to
public officials who are (1) acting during the course of their employment and
acting, or reasonably believing they are acting, within the scope of their
authority; (2) acting in good faith; and (3) performing discretionary, as
opposed to ministerial, acts.”  Murray v. White,
155 Vt. 621, 627, 587 A.2d 975, 978 (1991).  “Good faith exists
where an official’s acts did not violate clearly established rights of which
the official reasonably should have known.”  Id. at 630, 587 A.2d
at 980; see Mellin v. Flood Brook Union
Sch. Dist., 173 Vt. 202, 213, 790 A.2d 408, 419 (2001) (“We use an
objective standard when assessing whether a public official’s acts were taken
in good faith.”).


¶ 12.         In
determining whether a particular government official should be protected by
qualified immunity, we are guided by the doctrine’s purpose: to protect
officials from exposure to personal tort liability that could (1) hamper their
ability to effectively discharge their duties and (2) subject their
discretionary determinations to review by a judicial system ill-suited to
assess the full scope of factors involved in such determinations.  Hudson v. Town of East Montpelier, 161 Vt. 168, 172, 638
A.2d 561, 564 (1993).  Here, the scope of defendant’s investigation
into plaintiffs’ complaint was at the heart of his official and discretionary
duties as a police officer.  Cf. Czechorowski
v. State, 2005 VT 40, ¶ 21, 178 Vt. 524, 872 A.2d 883 (concluding that
investigation of state agency’s general counsel into allegations of sexual assault
may have been imprudent or even neglectful but that her decision not to
investigate further was discretionary rather than ministerial in nature).


¶ 13.         We
find unavailing plaintiffs’ attempts in this case to parse defendant’s
investigatory actions so as to tie his alleged negligence to a ministerial
rather than a discretionary act.  Although we determined in Kennery v. State, 2011 VT 121, ¶ 36, 191 Vt.
44, 38 A.3d 35, that police officers performing a welfare check were engaging
in a ministerial act when they misapplied the information they received to
search the wrong house, we explicitly distinguished the situation in Kane v.
Lamothe, 2007 VT 91, ¶ 10, 182 Vt. 241, 936 A.2d
1303, where an officer used his discretion not to arrest the alleged assailant
during his response to, and investigation of, a report of domestic
assault.  Notwithstanding plaintiffs’ argument that defendant violated his
ministerial duty to follow police protocol in locating the suspect, his alleged
negligent conduct here falls squarely within his discretion to determine the
scope of his investigation, including what efforts he undertook to serve a
misdemeanor citation on Bruno for making harassing telephone calls in response
to plaintiffs’ complaint of having received threatening telephone calls.


¶ 14.         As
for plaintiffs’ claim that defendant’s actions violated clearly established
law, internal policies and manuals not adopted as formalized rules are “not
legal requirements for which individuals may hold the State liable,” and do not
create a duty to third parties.  Kane, 2007 VT
91, ¶ 11.  Nor could an officer in
defendant’s position reasonably have believed that his actions in investigating
plaintiffs’ complaint violated Vermont’s Good Samaritan Act, 12 V.S.A.
§ 519(a), or a duty to protect John Baptie. 
Although Thomas Baptie had reported to defendant that
Bruno made threatening remarks about coming to the Baptie
residence to harm his family, John Baptie did not
appear to be in, or to consider himself to be in, any immediate danger, and
defendant never suggested that he was undertaking a duty to protect plaintiffs’
son.


¶ 15.         Moreover,
even considering the facts most favorably to plaintiffs, the record contains no
evidence of bad faith on defendant’s part.  To the contrary, the record
reveals that defendant informed plaintiffs that he would attempt to locate
Bruno and charge him with the misdemeanor offense of harassment by telephone,
and that he followed through on that promise, even if incompletely, by identifying
Bruno and attempting to locate him and serve him with a citation.  An
objective person in defendant’s position could not have believed that his
conduct violated clearly established law.


¶ 16.         Plaintiffs
allege animus on defendant’s part toward Thomas Baptie,
and further allege that when he first arrived at their residence he lied to
them about already having tried to identify and locate Bruno through the police
computer system.  While plaintiffs may have been 
dubious about defendant’s attention to their complaint on account of his
prior dealings with  Thomas, no evidence of actual animosity was raised
and nothing in the record suggests that defendant’s  investigation 
was  influenced by his past experiences with Thomas.  Plaintiffs
allege that defendant was inaccurate or untruthful in a statement to them about
his initial attempt to identify the caller; however, the undisputed facts are
that defendant did follow up with efforts to identify and locate Bruno and to
serve him with a misdemeanor citation, which is all that he had told plaintiffs
he would do.  In short, because plaintiffs cannot show either that
defendant’s conduct in responding to their complaint was ministerial rather
than discretionary in nature or that defendant acted in bad faith or violated
clearly established law, defendant is immune from their lawsuit claiming that
his inadequate investigation of their complaint made him liable for their son’s
murder.


¶ 17.         In
any event, we also agree with the superior court that plaintiffs cannot prove
all of the elements of their negligence and IIED claims.  Regarding the
negligence claim, the superior court ruled that plaintiffs would be unable to
prove either causation or the related element, duty.  We examine the more
primary element—duty—first and agree that plaintiffs cannot prove that
defendant owed them a duty to prevent the murder of their son.


¶ 18.         The
general rule is that “crimes committed by a third party fall within the realm
of the unforeseeable, and therefore cannot form the basis for [tort]
liability.”  Edson v. Barre
Supervisory Union # 61, 2007 VT 62, ¶ 13, 182 Vt. 157, 933
A.2d 200.  Defendants in civil tort actions may be held responsible
for protecting a person against the criminal act of another “only where the
defendant had special knowledge or notice upon which to impose a duty to
anticipate the wrongful act.”  Id.; compare Sabia
v. State, 164 Vt. 293, 305-06, 669 A.2d 1187, 1195-96 (1995) (concluding
that child protection agency had duty to protect two sisters from known abuser
by virtue of its awareness of abuse and its statutory duty to protect abused
children) with Estate of Sumner v. Dep’t of Soc. & Rehab. Servs., 162 Vt.
628, 629, 649 A.2d 1034, 1036 (1994) (mem.) (concluding that child protection agency had no duty to
anticipate sexual assault and murder perpetrated by child under its
supervision).


¶ 19.         In
determining whether the state or state actors have a special duty subjecting
them to liability for harm caused by third parties, we consider:


(1) whether a
statute sets forth mandatory acts for the protection of a particular class of
persons; (2) whether the government has knowledge that particular persons
within that class are in danger; (3) whether those persons have relied on the
government’s representations or conduct; and (4) whether the government’s
failure to use due care would increase the risk of harm beyond what it was at
the time the government acted or failed to act.


 


Sabia,
164 Vt. at 299, 669 A.2d at 1191.


¶ 20.         Relying
on these factors in Kane, we concluded that general statutes aimed at
preventing crime created “no special relationship between crime victims and law
enforcement officers” that would make a state trooper liable for his allegedly
negligent response to, and investigation of, an incident of domestic abuse. 2007 VT 91, ¶ 9.  As noted earlier, we also concluded
in Kane that internal Vermont state police operational policies and
procedures contained in a manual that, among other things, provided guidelines
for making an inherently discretionary arrest decision did not create a duty
owed to the victim to arrest the assailant in that particular case.  Id.
 ¶¶ 10-11.


¶ 21.         In
this case, plaintiffs cannot prove that defendant had a special relationship or
notice upon which to base his liability for Bruno’s murder of their son. 
Notwithstanding Bruno’s threats, as far as defendant knew from what the Bapties told him, Bruno and John Baptie
had known each other for a long time from school, and
Bruno was threatening John solely because John owed him a relatively small
amount of money for baseball cards.  Certainly, defendant did not have a
reason or duty to anticipate John Baptie’s decision
to engage the man who was the object of plaintiffs’ complaint.  See Edson, 2007 VT 62, ¶ 10 (noting that, under common
law, scope of legal duty of ordinary care is determined in part by foreseeability of consequences of individual’s acts or
omissions).


¶ 22.         Defendant
initially told plaintiffs that he would investigate their complaint, and then
later told them that he would attempt to locate Bruno and charge him with the
misdemeanor crime of harassment by telephone.  Defendant neither promised,
nor had a duty, to conduct his investigation in a particular manner.  As
in Kane, the police’s internal policies on conducting investigations,
including policies regarding the entering of names in the Computer Aided
Dispatch system, did not create a duty on defendant’s part, for the benefit of
plaintiffs, to conduct the investigation in a particular manner.


¶ 23.         Plaintiffs’
theory depends on the assumption that defendant’s investigation would result in
Bruno’s incarceration and thus incapacitation from harming John Baptie.  The undisputed facts demonstrate that
defendant never assured or even suggested to plaintiffs that he would seek to
have Bruno incarcerated in the near future; rather, he told them that he would
attempt to locate Bruno and charge him with a misdemeanor.  Nothing in the
record suggests that plaintiffs expected defendant or anyone else to remove
Bruno from the streets in the immediate future.  In fact, Thomas Baptie suggested to defendant on several occasions that he
would take matters into his own hands if Bruno showed up at his
residence.  In short, viewing the facts most favorably to plaintiffs,
plaintiffs cannot show that defendant owed them a special duty to prevent
Bruno’s murder of their son.


¶ 24.         Plaintiffs
fare no better on their IIED claim.  The elements of an IIED claim are:
“(1) conduct that is extreme and outrageous, (2) conduct that is intentional or
reckless, and (3) conduct that causes severe emotional distress.”  Thayer v. Herdt, 155 Vt. 448, 455,
586 A.2d 1122, 1126 (1990).  “An IIED claim can be sustained only
where the plaintiff demonstrates ‘outrageous conduct, done intentionally or
with reckless disregard of the probability of causing emotional distress,
resulting in the suffering of extreme emotional distress, actually or
proximately caused by the outrageous conduct.’ ”  Colby
v. Umbrella, Inc., 2008 VT 20, ¶ 10, 184 Vt. 1, 955 A.2d 1082 (quoting Boulton v. CLD Consulting Eng’rs,
Inc., 175 Vt. 413, 427, 834 A.2d 37, 49 (2003)).  Putting aside
plaintiffs’ difficulty in proving causation for the emotional distress they
undoubtedly suffered upon the death of their son, plaintiffs cannot, as a
matter of law, demonstrate that defendant’s conduct was either outrageous or in
reckless disregard of the probability of it resulting in extreme emotional
distress.  


¶ 25.         It is
undisputed that defendant responded to plaintiffs’ complaint; that he made
efforts both at the Baptie residence in talking to
Bruno, and later, to locate Bruno; that he called Bruno on the telephone number
he obtained at the Baptie residence in a further
effort to identify and locate him; that he in fact eventually identified Bruno
and thought he had discovered Bruno’s then-current address; and that he asked
the Rutland police to serve a citation upon Bruno, although they were
ultimately unable to do so.  In short, the record demonstrates that, even
if defendant’s investigation proved to be inadequate or incomplete, he made
some effort to locate and charge Bruno for what he reasonably believed to be a
misdemeanor crime.  This conduct cannot be considered outrageous in the
extreme, and the superior court correctly granted defendant summary judgment on
this claim.  See Jobin v. McQuillen, 158 Vt. 322, 327, 609 A.2d 990, 993 (1992)
(noting that trial court in first instance determines as threshold question
whether jury could determine that conduct at issue is so outrageous and extreme
as to go beyond all possible bounds of decency).


¶ 26.         Finally,
plaintiffs cannot prevail on their claim for punitive damages since they are
not entitled to an award of compensatory damages.  See Pion
v. Bean, 2003 VT 79, ¶ 44, 176 Vt. 1, 833 A.2d 1248 (stating that “court
can award punitive damages only if it has awarded compensatory damages”). 
For all of the above reasons, we affirm the superior court’s grant of summary
judgment to defendant.


Affirmed.



 
  

 

 
 
  

 

 
 
 FOR THE COURT:

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 Associate
 Justice

 

  














[*] 
Plaintiffs’ “counts” in their complaint alleging breach of ministerial duties
and bad faith are actually not independent legal claims, but rather arguments
against granting defendant qualified official immunity.