# David Long v. Thomas L'Esperance

[701 A.2d 1048]

No. 96-082

Present: Gibson, Dooley, Morse and Johnson, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed July 11, 1997

*Edmund A. Burke,* Putney, for Plaintiff-Appellant.

*Jeffrey L. Amestoy,* Attorney General, *Timothy B. Tomasi,* Assistant Attorney General, and *Renee Markus Hodin,* Special Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Johnson, J.** Following his arrest by defendant Trooper L'Esperance on the charge of disorderly conduct, see 13 V.S.A. § 1026, plaintiff brought this action alleging unlawful arrest, false imprisonment, assault, battery, and intentional infliction of emotional distress.[1] The case went to trial, and after plaintiff rested, defendant moved for judgment as a matter of law pursuant to V.R.C.P. 50(a). The court granted the motion as to all claims, holding that based on the evidence presented, defendant had probable cause to arrest plaintiff for the offense of disorderly conduct, and thus was protected from suit by the doctrine of official immunity. Plaintiff appealed. We conclude that plaintiff presented sufficient evidence to support his claim that defendant arrested him without probable cause, and accordingly, reverse.

■ We review de novo the court's decision granting defendant judgment as a matter of law,[2] viewing the evidence in the light most favorable to plaintiff, and excluding any modifying evidence. See *Grann v. Green Mountain Racing Corp.,* 150 Vt. 232, 233, 551 A.2d 1202, 1203 (1988). Judgment as a matter of law is proper only if no evidence exists fairly and reasonably supporting plaintiff's claim. *Smith v. Gainer,* 153 Vt. 442, 445, 571 A.2d 70, 71 (1990). We have described this as an "exacting standard," *Grann,* 150 Vt. at 233, 551 A.2d at 1203; if the evidence tends to support plaintiff's claim in any fashion, plaintiff is entitled to a jury determination. *South Burlington Sch. Dist. v. Calcagni-Frazier-Zajchowski Architects, Inc.,* 138 Vt. 33, 40, 410 A.2d 1359, 1362 (1980). We emphasize that in the specific context of this case, defendant has presented no evidence on his behalf. There may very well be another side to this story, as defendant suggests in his brief, but there is no evidence of it in the record, and in any event, it can have no bearing on our decision today.

Keeping this in mind, we turn to the evidence presented by plaintiff. Both plaintiff and plaintiff's brother testified about the

---

[1] The Vermont Department of Public Safety and the Commissioner of Public Safety were also named as defendants below. Plaintiff does not contest the trial court's dismissal of all claims against these defendants.

[2] Prior to the 1995 amendment to V.R.C.P. 50, the Rule referred to "directed verdict." The change was made to conform with Federal Rule 50 and to eliminate the confusion created by the phrase "directed verdict." Reporter's Notes — 1995 Amendment, V.R.C.P. 50. The standard for granting such a motion has not changed. *Id.*

events leading up to plaintiff's arrest. Driving home with his brother on July 6, 1992, plaintiff encountered a traffic back-up about a quarter mile in length. After waiting in traffic for approximately fifteen minutes, plaintiff reached defendant, who was one of the state troopers running a DUI roadblock that was the cause of the delay. Plaintiff gave the following testimony regarding the conversation between himself and defendant:

> [Plaintiff]: [H]e asked me if I had been drinking anything that night.
> [Counsel]: And your response?
> [Plaintiff]: No.
>
> . . . .
> . . . He asked me where I was coming from, and I said I was coming from playing basketball.
>
> . . . .
> He asked me where I was going. I said I was going home. . . .
>
> . . . .
> . . . Then he asked me, he said something to the effect like: "You look upset. Is there something wrong?"
> [Counsel]: And what was your response to that question?
> [Plaintiff]: I said, "Well, I am a little irritated to have to wait in this fucking traffic for so long."
> [Counsel]: Did you say that the traffic was ridiculous, do you recall something to that effect?
> [Plaintiff]: I might have.
> [Counsel]: But you used the word "fucking" in referring to the traffic; is that correct?
> [Plaintiff]: Correct.

According to plaintiff, at this point defendant became angry, informed him of the importance of the roadblock and told him repeatedly that "[he] should never swear in the presence of a police officer." Plaintiff indicated agreement with defendant. Defendant ordered plaintiff to pull his car to the side of the road, which plaintiff did, after "paus[ing] for a moment." Defendant approached the car, leaned in the window, and again told plaintiff that the roadblock was important and that plaintiff should not swear around police officers. Plaintiff nodded, "tr[ying] to agree with him." Defendant then ordered plaintiff out of the car.

Plaintiff testified that after he got out of the car, defendant stood facing him about a foot away, "barking at [plaintiff]" like a drill

sergeant and "continu[ing] to lecture him." Plaintiff then asked defendant, "What is this, boot camp?" Defendant replied, "That's it. You are under arrest," turned plaintiff around, handcuffed him, and led him to a police cruiser. Defendant took plaintiff to the state police barracks, where he was again handcuffed and shackled to a wall. Plaintiff testified that he was left alone in that position for about forty-five minutes. After spending approximately one hour in custody, plaintiff was released to his parents.

Plaintiff was arraigned[3] the next month on the charge of disorderly conduct, in violation of 13 V.S.A. § 1026(3), and pled not guilty. Several scheduled jury draws for the case were continued, and in mid-January, shortly after a jury was drawn, the state's attorney dismissed the charge against plaintiff.

In granting judgment for defendant in this matter, the trial court held that defendant was protected from suit by the doctrine of official immunity.[4] Official immunity "is available in some circumstances to shield public officials from lawsuits against them based on their activities." *Levinsky v. Diamond*, 151 Vt. 178, 183, 559 A.2d 1073, 1078 (1989), *overruled in part on other grounds by Muzzy v. State*, 155 Vt. 279, 583 A.2d 82 (1990). The protection from suit afforded a state employee such as defendant is qualified, not absolute: defendant is entitled to qualified immunity if he was "(1) acting during [his] employment and acting, or reasonably believing [he was] acting, within the scope of [his] authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial acts." *Id.* at 185, 559 A.2d at 1078.

---

[3] Defendant argues that the judicial finding of probable cause is "powerful evidence" that his arrest of plaintiff was based on probable cause. As we have discussed, however, our review is based solely on plaintiff's evidence, and we must consider that evidence in the light most favorable to plaintiff. The charging judge presumably heard defendant's version of the incident, which may vary greatly from the version presented by plaintiff and his brother.

[4] Plaintiff claims that defendant was precluded from invoking official immunity as a basis for his motion for judgment as a matter of law because defendant did not assert it as a defense in his answer. Despite ample opportunity to do so, plaintiff never raised this issue to the trial court. Defendant first invoked official immunity in his trial brief, and raised it again in his motion for judgment as a matter of law. Yet even plaintiff's postjudgment motion for a new trial, which squarely challenges the court's conclusion that official immunity applied, does not suggest that defendant should have been barred from relying on the defense. Having failed to raise the issue below, plaintiff may not do so on appeal. See *Dunning v. Meaney*, 161 Vt. 287, 292, 640 A.2d 3, 6 (1993); *In re Johnston*, 145 Vt. 318, 321, 488 A.2d 750, 756 (1985) (issues not raised below will ordinarily not be considered on appeal).

There is no dispute that defendant was acting within the scope of his authority, and that his arrest of plaintiff was a discretionary, rather than a ministerial, act. The key question in this matter is whether defendant acted in good faith. As a general matter, good faith exists if the "official's acts did not violate clearly established rights of which the official reasonably should have known." *Murray v. White*, 155 Vt. 621, 630, 587 A.2d 975, 980 (1991) (footnote omitted).

■ A law enforcement officer making a warrantless arrest, as happened here, acts in good faith if the officer had probable cause to make the arrest. See *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (Secret Service agents entitled to immunity if reasonable officer could have believed under the circumstances that probable cause existed for arrest). The officer can make a mistake in finding probable cause, but the arrest must be one a reasonable police officer could have believed was lawful, given the established law and circumstances at the time. *Id.* Thus, an arresting officer is entitled to qualified immunity if the officer had an objectively reasonable belief that probable cause to arrest existed, or if officers of reasonable competence could disagree as to whether there was probable cause. *Lennon v. Miller*, 66 F.3d 416, 423-24 (2d Cir. 1995).

Accepting plaintiff's testimony as true, plaintiff was arrested because, speaking in a conversational tone, he used the word "fucking" in response to a question asked by a police officer at a DUI checkpoint.[5] The narrow question before us is whether, based on this version of the facts, defendant acted reasonably in concluding that this statement established probable cause to arrest plaintiff on a disorderly conduct charge. Defendant maintains that, given the language of the disorderly conduct statute, his belief that probable cause existed to arrest plaintiff for that offense was in fact objectively reasonable. The statute provides:

> A person who, with intent to cause public inconvenience, or annoyance or recklessly creating a risk thereof:
>
> . . . .
>
> (3) In a public place uses abusive or obscene language
>
> . . .
>
> . . . .
>
> shall be imprisoned for not more than 60 days or fined not more than $500.00 or both.

---

[5] Plaintiff's description of the encounter suggests that his arrest was actually prompted by his "boot camp" comment. Neither defendant nor the trial court rely on this statement as an appropriate basis for the arrest.

13 V.S.A. § 1026. According to defendant, plaintiff's use of an expletive while speaking to an officer at a police checkpoint could reasonably have been viewed as a violation of this provision, at least prior to our decision in *State v. Read,* 165 Vt. 141, 680 A.2d 944 (1996). In *Read* we recognized that the reach of the "abusive language" provision of § 1026(3) must be narrowed to conform to constitutional requirements, and held that "[p]rosecution under that provision is appropriate only when a defendant's spoken words, when directed to another person in a public place, 'tend to incite an immediate breach of the peace.'" *Id.* at 148, 680 A.2d at 948 (quoting *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572 (1942)).

■ We agree with defendant that our holding in *Read* cannot stand as proof that defendant violated plaintiff's clearly established rights at the time of this incident, which occurred several years earlier. Obviously, police officers are not required to "predict[] the future course of constitutional law." *Pierson v. Ray,* 386 U.S. 547, 557 (1967). The logical corollary to that statement, however, is that reasonable police officers are presumed to have knowledge of the *current* state of constitutional law, at least as it applies to their duties. Plaintiff relies not on *Read* but on United States Supreme Court decisions reversing disorderly conduct convictions on grounds that the statutes violated the right to freedom of speech protected by the First Amendment. See *Hess v. Indiana,* 414 U.S. 105 (1973); *Cohen v. California,* 403 U.S. 15 (1971). Defendant is charged with knowing plaintiff's constitutional rights under these and related decisions, and we therefore evaluate defendant's decision to arrest plaintiff in light of these precedents.[6] Cf. *Hebert v. State,* 165 Vt. 557, 558-60, 679 A.2d 887, 889-90 (1996) (United States Supreme Court precedent and related decisions of United States Courts of Appeals establish prisoner's constitutional right to medical attention).

■ The United States Supreme Court has long recognized that persons may not be arrested for uttering constitutionally protected speech. See, e.g., *Gooding v. Wilson,* 405 U.S. 518, 521-22 (1972) (constitutional guarantees of freedom of speech forbid states to

---

[6] Defendant argues that plaintiff may not rely on these cases because he failed to cite them to the trial court. We have never held that a party is precluded from citing a case on appeal because it was not cited below.

punish use of words or language not within narrowly limited classes of speech). Certainly, plaintiff had a right to express peacefully his displeasure with the police roadblock. See *City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."); *Cohen*, 403 U.S. at 18 (defendant could not be punished for expressing his opinion about draft). He could be arrested for expressing his views only if his manner of doing so removed his speech from the realm of constitutional protection. See *Cohen*, 403 U.S. at 19-20 (First Amendment right not absolute; state may validly regulate speech that is obscene or that qualifies as "fighting words").

Plaintiff's manner of expressing his dislike of the roadblock — using an expletive as a descriptive adjective, not directed personally at defendant or anyone else — does not fall within one of the narrowly limited classes of speech that may be punished by the state. See *Hess*, 414 U.S. at 107 (statement by participant in antiwar demonstration that "[w]e'll take the fucking street later" did not fall within one of limited classes of speech that state may punish). His comment cannot be classified as "fighting words"; it did not "'inflict injury or tend to incite an immediate breach of the peace.'" *Gooding*, 405 U.S. at 522 (quoting *Chaplinsky*, 315 U.S. at 572); see also *Hess*, 414 U.S. at 107-08 (use of expletive, though offensive, could not be considered "fighting words"). Nor was the comment obscene. "Whatever else may be necessary to give rise to the States' broader power to prohibit obscene expression, such expression must be, in some significant way, erotic." *Cohen*, 403 U.S. at 20; see also *Roth v. United States*, 354 U.S. 476, 487 (1957) ("Obscene material is material which deals with sex in a manner appealing to prurient interest."). Plaintiff's phrasing may have been vulgar, but it was entirely unrelated to sexual activity or sexual desire.[7] See *Cohen*, 403 U.S. at 16, 20 (phrase "Fuck the Draft" not obscene); *Diehl v. State*, 451 A.2d 115, 119-20 (Md. 1982) (expletive directed at police officer not obscene where comment was not intended to excite sexual desire in officer). By speaking so crudely, plaintiff may have offended some, including defendant, but he did not

---

[7] Defendant points out that plaintiff testified that some people might find his comment obscene. Plaintiff also testified that he did not know either the legal or dictionary definitions of obscene, and that his comment had nothing to do with sex. We do not view plaintiff's testimony as relevant to this issue.

"invade a substantial privacy interest[]" in a manner that would warrant government intervention. *Cohen*, 403 U.S. at 21; see also *Rowan v. United States Post Office*, 397 U.S. 728, 738 (1970) (government may act to prohibit intrusion into privacy of home of unwelcome views and ideas). In short, we can find no constitutional basis for punishing the statement made by plaintiff.

█    We must determine, then, whether defendant could reasonably have relied on 13 V.S.A. § 1026(3) to make an arrest that, taking plaintiff's testimony as true, was clearly unlawful under controlling Supreme Court precedents. We note first that looking solely at the language of the statute, without reference to the law of free speech, defendant's claim that plaintiff's statement violated the statute is extremely weak. The evidence does not suggest that plaintiff intended "to cause public inconvenience, or annoyance or recklessly creat[ed] a risk thereof." *Id.* § 1026(3). He merely answered a question asked by defendant, in a way that defendant did not like. Any inconvenience to the public resulted from defendant's reaction, not from plaintiff's statement.[8]

█    Moreover, the relevant Supreme Court decisions that established plaintiff's right to make a statement such as this one are numerous, longstanding and clear, and involve factual situations similar to this case. Free speech is a fundamental right in our society, and its contours are well-established. Assuming that a reasonable officer could interpret the disorderly conduct statute to cover plaintiff's conduct, see *Lennon*, 66 F.3d at 424-25 (qualified immunity protects officers from suit where reasonable officer could have made same mistake in interpreting criminal statute), a reasonable officer nonetheless could not have believed that such an interpretation was constitutionally valid. Cf. *Pierson*, 386 U.S. at 557 (officers excused from liability for acting under statute they reasonably believed to be valid). A reasonable police officer would have understood that arresting plaintiff merely for uttering an expletive violated plaintiff's

---

[8]Defendant points to plaintiff's brief pause before pulling over to the side of the road as evidence that plaintiff recklessly risked inconveniencing or delaying the officers and other drivers at the checkpoint. Plaintiff's arrest, however, was based on his statement, not on an alleged failure to comply with defendant's request. Moreover, plaintiff explained his reaction as prompted by a desire to act "deliberate[ly]" and "slow[ly]" in the presence of a police officer. He also denied that defendant had to ask him a second time to pull over. Viewing the evidence in the light most favorable to plaintiff, that plaintiff "paused for a moment but . . . did not delay" before pulling over, does nothing to bolster the disorderly conduct charge.

clearly established right to free speech, and in turn, his right not to be arrested without probable cause. See *Murray*, 155 Vt. at 630, 587 A.2d at 980 (contours of right must be sufficiently clear that reasonable official would understand that what he is doing violates that right). Based on the evidence presented by plaintiff, defendant did not act in good faith and is not entitled to official immunity.

■ Defendant further argues that he is protected from suit by 12 V.S.A. § 5602. The trial court did not rest its decision on this ground, but it was argued below, and we will consider it here. See *Hudson v. Town of East Montpelier*, 161 Vt. 168, 170, 638 A.2d 561, 563 (1993) (we need not adopt trial court's rationale in affirming its conclusion). Although § 5602 does protect state employees from suit by providing that under certain circumstances "the exclusive right of action shall lie against the state of Vermont," 12 V.S.A. § 5602(a), the statute explicitly does not apply "to gross negligence or willful misconduct." *Id.* § 5602(b). As we have already discussed, based on the evidence presented by plaintiff, defendant should have known that his arrest of plaintiff was unlawful. A jury could find that his decision to arrest plaintiff under these circumstances amounted to gross negligence or willful misconduct. See *Hardingham v. United Counseling Serv.*, 164 Vt. 478, 481, 672 A.2d 480, 483 (1995) (question of gross negligence usually for jury, unless reasonable minds could not differ on issue).

■ Finally, we reject defendant's argument that plaintiff failed to support his claim of intentional infliction of emotional distress. To prevail on this claim, plaintiff must demonstrate that defendant's conduct was outrageous, that he acted intentionally or with reckless disregard of the probability of causing emotional distress, and that defendant's outrageous conduct was the actual or proximate cause of plaintiff's extreme emotional distress. *Crump v. P & C Food Markets, Inc.*, 154 Vt. 284, 296, 576 A.2d 441, 448 (1990). Accepting plaintiff's evidence as true, defendant arrested plaintiff without legal justification. This is sufficient evidence for the case to go to a jury on the elements of intentional infliction of emotional distress. Cf. *id.* at 296-97, 576 A.2d at 448-49 (describing evidence sufficient to raise jury question on intentional infliction of emotional distress claim).

As we conclude that the court erred in granting defendant judgment as a matter of law on all claims, we remand the matter for trial. In light of our disposition, we do not address plaintiff's claim that the

court abused its discretion by denying plaintiff's motions for a new trial and for amended judgment.

*Reversed and remanded for further proceedings consistent with this opinion.*