Dean KENT, Plaintiff,

v.

Jared KATZ, individually and in his capacity as a Colchester police officer, Defendant.

No. 2:99–CV–189.

United States District Court, D. Vermont.

Jan. 20, 2004.

Thomas C. Nuovo, Bauer, Anderson & Gravel, Burlington, VT, for plaintiff.

Joseph A. Farnham, McNeil, Leddy & Sheahan, Burlington, VT, for defendant.

### MEMORANDUM AND ORDER

SESSIONS, Chief Judge.

Plaintiff Dean Kent ("Kent") brought action against former Colchester Police Officer Jared Katz ("Katz") for violating Kent's rights under state law and the United States Constitution during Kent's arrest on June 20, 1996. On October 23, 2003, a jury in the United States District Court for the District of Vermont concluded that Kent failed to prove his unlawful arrest and battery claims against Katz. The jury found that Katz used excessive force against Kent during the course of the arrest in violation of the United States Constitution and state law, but also found that Kent was entitled to qualified immunity on the excessive force claims.

Kent now moves for judgment as a matter of law ("JMOL") pursuant to Fed. R.Civ.P. 50. Alternatively, Kent moves for a new trial pursuant to Fed.R.Civ.P. 59. For the reasons set forth below, Kent's motions are DENIED.

### BACKGROUND [1]

1. The facts of this case are set forth in *Kent v. Katz,* 312 F.3d 568 (2d Cir.2002). For clarity,

In setting forth the following facts, the Court views the evidence in the light most favorable to Katz and grants him every reasonable inference that the jury might have drawn in his favor. *See, e.g., Tolbert v. Queens College,* 242 F.3d 58, 71 (2d Cir.2001).

On the afternoon of June 20, 1996, Dean Kent and two assistants were clearing brush from Kent's property in Colchester, Vermont. Central to this operation was a large pile of burning brush. At some point in the early evening, Kent left his companions to visit a neighbor's house. While Kent was away, Officer Jared Katz arrived in response to a complaint about the fire. Kent returned shortly thereafter, parked his vehicle, and walked toward Katz.

Katz informed Kent that there had been a complaint; Kent asked who had complained. This exchange occurred several times. The officer asked whether Kent had a permit for the fire. According to Katz, Kent was unsteady on his feet, had bloodshot eyes, smelled of alcohol, and was unreasonable and belligerent. Katz believed Kent was intoxicated and asked Kent whether he had been drinking. Kent denied drinking, but also responded "[n]ot very much." At trial, Kent contended that this response was made sarcastically. He denied that he had been drinking and offered several witnesses who testified that they had not observed Kent drinking that day.

Katz asked Kent to take a sobriety test and Kent refused. The officer then arrested Kent for suspicion of driving while under the influence ("DWI") in violation of Vt. Stat. Ann. tit. 23, § 1201 (1999 & Supp. 2003). Katz ordered Kent to turn around and place his hands behind his back. Kent resisted this order and struggled with Katz. Katz placed Kent in a "rear wrist lock" and eventually brought him to the ground. At some point, Kent's wrist was broken.

On June 24, 1996, Katz filed an affidavit in the Vermont District Court for Chittenden County stating that he "ha[d] probable cause" to believe that Kent had driven while intoxicated in violation of section 1201. (Pl.'s Ex. 13.) This affidavit was submitted in connection with the State of Vermont's summary procedure for civil suspension of the driver's license of a person whom a law enforcement officer had reasonable grounds to believe was violating section 1201. *See* Vt. Stat. Ann. tit. 23, § 1205 (1999 & Supp.2003).

On July 11, 1996, the State filed an information against Kent charging him with DWI in violation of section 1201. On July 16, 1996, acting Chittenden County District Judge E.M. Allen found probable cause for the DWI charge. (Def.'s Ex. F.) *See generally* Vt. R.Crim. P. 5(c) ("If the defendant was arrested without a warrant ... and the prosecution is upon information, the judicial officer shall determine ... whether there is probable cause to believe that an offense has been committed and that the defendant has committed it.") *See also* Vt. R.Crim. P. 5(h) (allowing the defendant to challenge such a finding).

Kent was arraigned on the DWI charge on July 16, 1996. He pleaded not guilty and subsequently moved for a "Good Cause Hearing" on that charge. Kent's motion was adjourned several times and was never heard because in January 1997, he and the State agreed to settle the case. The State reduced the charge against Kent from DWI to careless and negligent operation of a motor vehicle, in violation of Vt. Stat. Ann. tit. 23, § 1091(a)(1) (1999). Kent pleaded nolo contendere to the negligent operation charge. (Def.'s Ex. F.) The

the Court summarizes the facts here.

State did not pursue the civil suspension of Kent's driver's license under section 1205.

In June 1999, Kent commenced the instant action in state court against Katz and others, principally asserting claims of unlawful arrest, excessive force and battery in violation of 42 U.S.C. § 1983, the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and state law. The defendants removed the case to federal court and moved for summary judgment.

This Court denied the motion for summary judgment on the unlawful arrest, excessive force and battery claims. The Court ruled that there were genuine issues of material fact to be tried as to both the underlying claims and the issue of qualified immunity.

Katz appealed. The Second Circuit dismissed part of the appeal for lack of appellate jurisdiction, *Kent*, 312 F.3d at 570, and addressed two questions: (1) whether Katz was entitled to qualified immunity as a matter of law on the false arrest claims, on the basis that the Vermont District Court's July 16, 1996 finding of probable cause constituted collateral estoppel and thus precluded Kent from establishing an essential element of his claim for false arrest; and (2) whether Katz was entitled to qualified immunity on the unlawful arrest claim as a matter of law based on the two undisputed facts of Kent's red eyes and his "[n]ot very much" response to Katz's question about drinking. The Second Circuit ruled that the Vermont District Court's finding of probable cause did not constitute collateral estoppel because it was not a final decision and Kent had no opportunity to litigate the issue. *Id.* at 573–76. In addition, the Second Circuit held that Kent's red eyes and his "[n]ot very much" comment were insufficient for the court to

determine, as a matter of law, that Katz was entitled to qualified immunity. *Id.* at 576–77. The case was tried before a jury in this Court on October 21–23, 2003.

## DISCUSSION

Pursuant to Rule 50, Kent made a timely motion for JMOL at the close of evidence and now renews that motion. Where a party moves jointly under Rules 50(b) and 59(a), the court must rule separately on each motion. *Katt v. City of New York*, 151 F.Supp.2d 313, 327–28 (S.D.N.Y.2001). Accordingly, Kent's motions will be addressed separately, beginning with his renewed Rule 50 motion for judgment as a matter of law.

*I.   Judgment as a Matter of Law*

█ A motion for JMOL pursuant to Rule 50 must be denied "unless, viewed in the light most favorable to the nonmoving party, 'the evidence is such that . . . there can be but one conclusion as to the verdict that reasonable [persons] could have reached.'" *Cruz v. Local Union Number 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154–55 (2d Cir.1994) (quoting *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970)). A trial court must "consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The Court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 367 (2d Cir.1988) (internal quotation marks and citations omitted).

Kent moves for JMOL on unlawful arrest, excessive force and qualified immunity.[2]

---

**2.**   Kent also moves for JMOL or a new trial on the claim of battery (Pl.'s Mem. at 1, 20, Doc.

133) but makes no supporting argument. Accordingly, the motion is denied.

## A. Unlawful Arrest

■ A § 1983 claim of unlawful arrest based on the Fourth Amendment must fail if there was probable cause for the arrest. *E.g., Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). It appears that the same principle applies to a claim of unlawful arrest under Vermont law. *See Long v. L'Esperance,* 166 Vt. 566, 571, 701 A.2d 1048, 1052 (1997) (discussing the requirement for probable cause in the context of a qualified immunity determination). Under both federal and state law, probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. *E.g., Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *State v. Greenslit,* 151 Vt. 225, 228, 559 A.2d 672, 674 (1989).

### 1. Sufficiency of the Evidence

■ Kent claims that there was no evidence presented which would allow a reasonable jury to find that Katz had probable cause to arrest Kent for DWI. In support of this claim, Kent emphasizes that several witnesses testified that Kent did not appear intoxicated during his encounter with Katz. In addition, Kent points to alleged inconsistencies between Katz's Use of Force Report dated June 21, 1996 (Pl.'s Ex. 11), his hand-written and typed DWI processing affidavits, dated June 24, 1996 (Pl.'s Exs. 12, 13), his Supplemental Use of Force Report, dated October 21, 1996 (Pl.'s Ex. 14), and his testimony at trial.

Katz's reports and affidavits were admitted into evidence and Plaintiff's counsel explored the alleged inconsistencies during his direct and re-direct examination of Katz. Katz testified that he thought Kent was intoxicated and described the aspects of Kent's demeanor and appearance that led him to this conclusion. In making his assessment, Katz considered factors such as Kent's belligerent attitude, bloodshot eyes, "not very much" comment, unsteady walk, and the smell of alcohol on his breath. For his part, Kent presented evidence that disputed or explained some of these factors. Nevertheless, the evidence presented was not so overwhelming that a reasonable jury could only reach one conclusion about whether Katz had probable cause to arrest Kent for DWI. *Cruz,* 34 F.3d at 1154–55.

The jury was free to use all the evidence, including any inconsistencies in Katz's various accounts of the incident, to assess his credibility. The jury was also free to weigh the credibility of Katz's testimony against that of Kent and his witnesses. In deciding in Katz's favor on the unlawful arrest claim, the jury evidently found Katz to be the more believable witness. The court cannot assess the weight of conflicting evidence, or reach its own conclusions about the credibility of the witnesses pursuant to a Rule 50 motion. *Smith,* 861 F.2d at 367. To do so would be to substitute the court's judgment for that of the jury. *Id.*

### 2. Jury Instruction on Probable Cause

■ At trial, Kent requested the jury be instructed that, as a matter of law, Katz did not have probable cause to arrest Kent if all the jury found was that at the time of the arrest Kent had red eyes and responded "[n]ot very much" to Katz's inquiry about Kent's drinking. The Court declined to provide such an instruction and Kent made a timely objection. Kent now moves for JMOL based on the Court's refusal to provide the requested instruction.

In support of this motion, Kent relies on the Second Circuit's statement that "the

two undisputed facts on which Katz relies, especially in the circumstances here, are not sufficient indicia of intoxication to permit a conclusion that Katz's belief was objectively reasonable as a matter of law." *Katz*, 312 F.3d at 576. Apparently, Kent misunderstands this language as having created a binding rule of law on probable cause. But the above-quoted language is extracted from the Second Circuit's denial of Katz's motion for summary judgment. The court continues, "whatever inferences were objectively reasonable from the two facts that are undisputed are factual issues to be resolved by the factfinder." *Id.* Therefore, the Court's refusal to provide the requested jury instruction was not in error and does not entitle Kent to JMOL.

### 3. *Vermont District Court's Docketing Statement*

■ At trial, Kent objected to the admission into evidence of the Vermont District Court's Docketing Statement in which states that acting Judge E.M. Allen found probable cause for Kent's arrest. (Def.'s Ex. F.) Kent now moves for JMOL on the ground that the admission of this document allowed the jury to mistakenly conclude that the Vermont judge had determined Katz had probable cause to arrest Kent.

As Kent concedes, Katz made no reference to the Docketing Statement during the trial. The Court provided the jury with a detailed instruction explaining that Kent had the right to a hearing to determine if probable cause existed. The instruction further explained that no such hearing was held in Kent's case because of his plea agreement. The text of the jury instruction was identical to that proposed by Plaintiff's counsel. As a result, the Docketing Statement was in no way prejudicial to Kent. The Court declines to alter the jury's judgment on unlawful arrest.

### B. *Excessive Force and Qualified Immunity*

■ When a plaintiff alleges that a police officer has used excessive force during arrest in violation of § 1983 and the Fourth Amendment, the factfinder must determine whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The same standard is applied under Vermont law. *Coll v. Johnson*, 161 Vt. 163, 164–165, 636 A.2d 336, 338 (1993) (quoting *Graham*, 490 U.S. at 397, 109 S.Ct. 1865).

■ Under both federal and state law, a qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law. *See, e.g., Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Stevens v. Stearns*, 833 A.2d 835, 840 (Vt.2003). The principle that the use of excessive force against an individual during the course of an arrest violates both the United States Constitution and state law was clearly established prior to Katz's arrest of Kent in 1996. *See, e.g., Graham*, 490 U.S. at 393–94, 109 S.Ct. 1865; *Coll*, 161 Vt. at 164–65, 636 A.2d at 338. Therefore, Katz was entitled to qualified immunity only if it was objectively reasonable for him to believe that his use of force against Kent did not violate the law. Kent bases his motion for JMOL on excessive force and qualified immunity on three principal grounds.

### 1. *Sufficiency of the Evidence*

■ Kent first argues that no reasonable jury could have determined that Katz

was entitled to qualified immunity. According to Kent, Katz provided no evidence to demonstrate that it was objectively reasonable for Katz to believe his use of force was legal. Kent's argument is unsupported by the record. Katz testified that his decision to use force against Kent was consistent with his police training. In addition, Katz demonstrated the "rear wrist lock" technique he employed to restrain Kent. He testified that his use of that technique was also consistent with his police training. This testimony alone was sufficient to allow the jury to conclude it was objectively reasonable for Katz to believe his use of force was legal.

In addition to his own testimony, Katz provided Officer Evan Eastman, a use of force instructor for the Vermont State Police, as an expert witness. Eastman testified that he taught police officers to use the "rear wrist lock" to restrain defendants during the course of an arrest. Eastman also demonstrated the appropriate method of applying the "rear wrist lock." That demonstration was virtually identical to the method Katz testified using during his arrest of Kent. The jury had ample evidence to conclude Katz was entitled to qualified immunity on the excessive force charge.

2. *Jury Instructions on Excessive Force and Qualified Immunity*

■ Kent also moves for JMOL based on the excessive force and qualified immunity jury instructions. Kent does not contend that these instructions varied from the standard instructions on excessive force and qualified immunity. Instead, Kent argues that the instructions on excessive force and qualified immunity both required the jury to determine whether Katz acted reasonably when using force to arrest Kent. According to Kent, the reasonableness inquiry for excessive force is es-

sentially the same as that for qualified immunity. Therefore, Kent contends the jury rendered a legally inconsistent verdict when it determined that Katz had used excessive force against Kent, but was nevertheless entitled to qualified immunity on that claim.

Kent failed to object to the excessive force and qualified immunity instructions at trial and is therefore barred from raising the objection now. Fed.R.Civ.P. 51. Even in the absence of this procedural impediment, Kent's argument is without merit. The Supreme Court has held that the reasonableness inquiry in a qualified immunity determination is distinct from the reasonableness inquiry in an excessive force determination. *Saucier v. Katz*, 533 U.S. 194, 197–207, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).[3] In *Saucier*, the Court explained that the inquiry as to whether a police officer used excessive force hinges on the facts and circumstances facing the officer at the scene. *Id.* at 205, 121 S.Ct. 2151. An officer could be reasonably mistaken about a given fact, for example, whether a suspect was likely to fight back, and would therefore be justified in using more force than was needed. *Id.*

In contrast, in a qualified immunity determination the relevant question is whether the officer's mistake about the legality of his conduct was reasonable. The Court stated that, "[a]n officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Id.*

In its finding for Kent on the excessive force claim, the jury could have concluded that Katz was unreasonably mistaken

**3.** Kent fails to discuss, or even cite, *Saucier* in    his memorandum.

about the facts and circumstances facing him during the incident with Kent and was therefore unreasonably mistaken about the appropriate level of force needed to arrest Kent. The jury also could have found that Katz reasonably believed the amount of force he used to arrest Kent was legal, and thus concluded that Katz was entitled to qualified immunity. These are legally consistent determinations that a reasonable jury could have reached.

### 3. *Evan Eastman's Testimony*

Finally, Kent moves for JMOL due to alleged violations of a pretrial order concerning the content of Evan Eastman's testimony. Prior to trial, Kent filed a motion in limine to prevent Evan Eastman, Katz's expert witness, from testifying about the reasonableness of Katz's use of force against Kent. (Doc. 105) The Court granted the motion. Without citing the transcript, Kent now asserts that Defendant's counsel violated this order on three separate occasions, requiring Plaintiff's counsel to object. Kent contends the statements by Defendant's counsel allowed the jury to improperly determine that Katz was entitled to qualified immunity.

In each of the instances raised by Kent, there was a timely objection by Plaintiff's counsel and any effect on the jury was minimal. Evan Eastman did not offer any testimony about whether Katz's use of force against Kent was reasonable. Nothing raised by Kent about Eastman's testimony suggests that the jury reached an improper determination on qualified immunity.

In sum, Kent has not established that he is entitled to JMOL on either excessive force or qualified immunity.

### II. *Motion For a New Trial*

Federal Rule of Civil Procedure 59 permits the court to grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). "A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir.1998) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir.1997)). In contrast to a ruling on JMOL, when deciding a motion for a new trial, the court is not required to consider the evidence in the light most favorable to the non-movant. Instead, the court may weigh conflicting evidence and decide whether a seriously erroneous result has been reached by the jury. *Song v. Ives Labs.*, 957 F.2d 1041, 1047 (2d Cir.1992).

Kent bears the burden of demonstrating his entitlement to a new trial. *See, e.g., U.S. v. Sasso*, 59 F.3d 341, 350 (2d Cir.1995); *Giles v. Rhodes*, 171 F.Supp.2d 220, 225 (S.D.N.Y.2001). Kent bases his motion for a new trial on the same arguments he raised in support of his JMOL motion. Accordingly, the Court has reviewed each of Kent's arguments separately under the appropriate standard for a motion for new trial. Nothing raised by Kent indicates that the jury in this case reached a seriously erroneous result or that the verdict was a miscarriage of justice. Therefore, Kent's motion for a new trial is denied.

### CONCLUSION

Wherefore, Kent's Rule 50 and 59 motions for JMOL or a new trial (Doc. 132) are DENIED. Katz's Motion for Entry of Judgment (Doc. 131) is GRANTED.