15-1793-cv
Sakoc v. Carlson

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of August, two thousand sixteen.

PRESENT: PIERRE N. LEVAL,
CHRISTOPHER F. DRONEY,
*Circuit Judges*,
PAUL A. ENGELMAYER,[1]
*Judge*.

------------------------------------------------------------------------

FATA SAKOC,

*Plaintiff-Appellant*,

v.                                                                No. 15-1793-cv

TIMOTHY CARLSON,

*Defendant-Appellee.*

------------------------------------------------------------------------

FOR PLAINTIFF-APPELLANT:        BROOKS G. MCARTHUR (David J. Williams, *on the brief*), Jarvis, McArthur & Williams, LLC, Burlington, VT.

FOR DEFENDANT-APPELLEE:        KATE T. GALLAGHER, Assistant Attorney General, State of Vermont, Montpelier, VT.

---

[1] Judge Paul A. Engelmayer, of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from a May 8, 2015 opinion and order of the United States District Court for the District of Vermont (Reiss, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and the case is **REMANDED**.

Plaintiff-Appellant Fata Sakoc appeals from a May 8, 2015 opinion and order of the United States District Court for the District of Vermont (Reiss, *C.J.*), granting Defendant-Appellee Timothy Carlson's motion for summary judgment on the basis of qualified immunity.

This case arises from a traffic stop of Sakoc on March 5, 2010, on Route 15 in Essex, Vermont, by Carlson, a Vermont State Trooper, at approximately 11:15 p.m. Sakoc was returning home from her shift at a nearby nursing home, and was operating her car with one of its headlights not illuminated. Carlson stopped Sakoc's car on the basis of the defective light. Claiming he suspected that Sakoc's ability to operate the vehicle was impaired by alcohol, Carlson administered a series of field sobriety tests to her. Concluding that Sakoc failed to pass those tests, Carlson then administered an "Alco-Sensor" test, commonly known as a breath test. Before the breath test, Carlson told Sakoc that if she passed that test, she would be free to go home. Although Sakoc passed the Alco-Sensor test, Carlson then arrested her for violating the Vermont statute prohibiting driving while impaired by a drug other than alcohol. Carlson transported Sakoc to a police station and then to a local hospital where she passed a blood test for alcohol and drugs. As a result, the citation for driving while impaired was dismissed. Sakoc then filed this action against Carlson. Carlson was granted summary judgment by the district court on the basis of qualified immunity.

We review a district court's grant of summary judgment de novo. *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 955 (2d Cir. 2015). In doing so, we construe the evidence in the light most favorable to the nonmoving party, and will affirm a district court's grant of summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *United States v. All Funds Distributed To, or o/b/o Weiss*, 345 F.3d 49, 53-54 (2d Cir. 2003).

Sakoc asserts that Carlson arrested her without probable cause, thus violating her Fourth Amendment right to be free from unreasonable seizures. This is also known as a "false arrest" claim. The district court found that Carlson was protected by qualified immunity. Qualified immunity shields federal and state officials from money damages unless a plaintiff asserts facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the

challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Even if the right at issue was clearly established in certain respects, however, an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (internal quotation marks omitted). Under Vermont law, "probable cause for arrest exists where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a person of reasonable caution to believe that a crime is being committed." *State v. Guzman*, 184 Vt. 518, 524 (2008) (internal quotation marks omitted). To be entitled to qualified immunity, "[t]he officer can make a mistake in finding probable cause, but the arrest must be one a reasonable police officer could have believed was lawful, given the established law and circumstances at the time." *Long v. L'Esperance*, 166 Vt. 566, 571 (1997). "Thus, an arresting officer is entitled to qualified immunity if the officer had an objectively reasonable belief that probable cause to arrest existed, or if officers of reasonable competence could disagree as to whether there was probable cause." [2] *Id.*

Here, the offense that Carlson suspected Sakoc of committing was that of operating a vehicle on a highway while "under the influence of any [drug other than alcohol] or under the combined influence of alcohol and any other drug to a degree which renders the person incapable of driving safely." 23 V.S.A. § 1201(a)(3).[3] No Vermont state court decision had specifically addressed the question of what constitutes probable cause to arrest a suspect for violating this provision.[4]

---

[2] Although Vermont courts have not used these words, we refer to this standard as "arguable probable cause." *See Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted).

[3] In 2014, the Vermont Legislature amended the statute to delete the words "to a degree which renders the person incapable of driving safely," and to provide that "under the influence of a drug" means "that a person's ability to operate a motor vehicle safely is diminished or impaired to the slightest degree." 23 V.S.A. § 1201(h). Thus, at the time of the stop, it was "more difficult" to prove driving under the influence of drugs than to prove driving under the influence of alcohol. *See State v. Frigault*, 151 Vt. 537, 538 (1989).

[4] Sakoc reads *State v. Rifkin,* 140 Vt. 472, 476 (1981), to require a police officer to have observed a driver operating unsafely before making an arrest. She bases this understanding in part on statements made at the scene of the stop by two of the officers present that suggested that the Vermont State Police had a policy of only making arrests for suspected violations of 23 V.S.A. § 1201(a)(3) when unsafe operation of a vehicle had been observed, and she points to evidence in the record suggesting that Carlson changed his account of his reason for initiating the traffic stop after he learned of this policy. Whether or not there was such a policy at the time, Sakoc has identified no Vermont statute or decision of the Vermont Supreme Court that would require it. Nor is the reason for the stop otherwise relevant to the probable cause analysis. Under Vermont law, reasonable suspicion of "even a minor traffic infraction can be the basis of a traffic stop." *State v. Tuma*, 194 Vt. 345, 347 (2013), and Sakoc does not dispute that

The parties disagree about many of the details of what transpired after the traffic stop that led to Sakoc's arrest, including (1) whether her speech was slurred, (2) whether she demonstrated confusion in her interactions with Carlson both before and after exiting her vehicle, and (3) whether there was an odor of alcohol emanating from her vehicle. They also disagree as to how to evaluate Sakoc's performance on the field sobriety tests that she underwent at Carlson's request and that are captured on a video that was presented in evidence during the summary judgment proceedings.[5]

Because of the significant disputes between the parties as to the facts leading up to the arrest, the district court relied only on the following undisputed facts in granting summary judgment: (1) Sakoc conceded "that her performance on [the field sobriety tests] was not perfect," (2) the video "confirms that her performance was not flawless," (3) "it is evident from the video that she failed to follow some of [Carlson's] instructions and exhibited some degree of confusion," and (4) Carlson "was in receipt of a second opinion from another law enforcement officer" on the scene (local police officer Dunning) that Sakoc had failed the field sobriety tests. *Sakoc v. Carlson*, No. 5:11–cv–290, 2015 WL 2172125, at *12-13.

On appeal, Sakoc concedes again that her performance on the field sobriety tests was not perfect, and that she could rightly have been assigned two defects in her performance, also known as "clues." She argues, however, that at the time of the arrest no reasonably competent police officer would believe that two clues garnered from field sobriety tests, when considered along with the other evidence she presented, would establish probable cause for arrest under 23 V.S.A. § 1201(a)(3). We agree.

The district court was correct in stating that, at the time of Sakoc's arrest, the standard for probable cause for arrest for a violation of 23 V.S.A. § 1201(a)(3) was "undeveloped" in Vermont. *Sakoc v. Carlson*, No. 5:11–cv–290, 2015 WL 2172125, at *12-13. We also agree with the district court's conclusion that reasonably competent officers could have disagreed as to the propriety of relying on performance on field sobriety tests in finding probable cause for arrest for a violation of that statute.[6]

---

the initial stop of her car was justified because of its broken headlight.

[5] Only a part of the video had audio.

[6] Sakoc disagrees, pointing out that there is no Vermont decision holding specifically that performance on field sobriety tests is relevant to a conclusion that a person is incapable of driving safely due to the influence of a drug other than alcohol. However, there are also no decisions holding that field sobriety tests may *not* be considered. Moreover, field sobriety tests have been recognized by Vermont courts as relevant in the context of determining alcohol impairment. See *State v. Therrien*, 191 Vt. 24, 29-30 (2011) ("[T]he basis for probable cause to arrest is detailed in the officer's affidavit and . . . includes . . . the results of the field sobriety tests, which strongly indicated that defendant was impaired."); *State v. McGuigan*, 184 Vt. 441, 452-53 (2008) ("Considering defendant's poor performance in these exercises, there is no question that the trooper had probable cause to arrest after the

Having reviewed the video, the transcript of the audio portion in evidence, and having considered all the evidence in the light most favorable to Sakoc, however, we conclude that—even with the law undeveloped as it was and even accepting that field sobriety tests may be relevant to impairment under drugs other than alcohol—no reasonable officer could have found arguable probable cause to arrest Sakoc for a violation of 23 V.S.A. § 1201(a)(3) solely based the video and accompanying audio of the field sobriety tests. The two conceded "clues" were minimal, Sakoc's performance appeared to be otherwise satisfactory, and all remaining evidence tending to support probable cause was disputed and therefore must be treated on defendant's motion for summary judgment in the light most favorable to Sakoc. Furthermore, Sakoc proffered evidence that this was Carlson's first DUI arrest and he was motivated to arrest her so as to satisfy the completion of his field training. While a police officer's motivation does not invalidate objectively justifiable behavior, in this case, suspect motivations can affect a jury's appraisal of Carlson's testimony in support of probable cause. As the district court correctly concluded, Carlson's other claimed bases for the arrest, including improper operation of the vehicle before the stop, an odor of alcohol, poor performance of the portions of the field sobriety tests that cannot be observed on the video or heard in the audio, slurred speech, and "bombing" the field sobriety tests, are all disputed material facts. Crediting Sakoc's version of the disputed facts, and evaluating the video and transcript in the light most favorable to her, the jury could conclude that Carlson unreasonably exaggerated the minimal flaws in Sakoc's performance on the field sobriety tests.[7] A jury evaluating the credibility of this and all other testimony could determine that there was no probable cause for plaintiff's arrest. Consequently, considering all of that evidence in Sakoc's favor—as we must at the summary judgment stage—compels us to **VACATE** the judgment of the district court and **REMAND** for further proceedings.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

administration of the field-sobriety tests."). Sakoc may be correct that the standard for alcohol impairment under the statute was different at the time than the standard for impairment from other drugs, but reasonably competent officers could disagree over whether performance on field sobriety tests was relevant to assessing a person's degree of impairment from another drug.

[7] Indeed, the district court itself found that "evidence that Trooper Carlson allegedly fabricated evidence of erratic operation affects the credibility of his remaining observations during the traffic stop and renders that credibility determination a question for the jury." *Sakoc*, 2015 WL 2172125, at *9.

5