Filed 07/26/24

VERMONT SUPERIOR COURT
Orleans Unit
247 Main Street
Newport VT 05855
802-334-3305
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-01303

| James Burke v Nick Deml et al |
|---|

## ENTRY REGARDING MOTION

Title: Motion for Summary Judgment; Motion for Summary Judgment; Motion to Dismiss; Motion to Strike ; ; ; Plaintiffs Cross-Motion for Summary Judgment (Motion: 2; 8; 12; 14)
Filer: James Burke; James Burke; Pamela Eaton; Pamela Eaton
Filed Date: June 26, 2023; February 13, 2024; March 22, 2024; May 06, 2024

The motion is GRANTED IN PART and DENIED IN PART.

Plaintiff James Burke has filed the present action seeking monetary damages and injunctive relief from Defendant Nicholas Deml, Commissioner of the Vermont Department of Corrections. Plaintiff's claims arise from the fact that he was incarcerated at the Tallahatchie County Correctional Facility ("TCCF")in Mississippi during the COVID-19 epidemic and contracted the illness for which he claims TCCF, and by extension, Commissioner Deml, are responsible. Plaintiff's central contention is that the Defendants' policies and actions "failed to medically protect me against their own original and personal COVID-19 infections." Pltf. Stmnt of Mat. Facts at 3 (Apr. 4, 2024).[1] With this proposition, Plaintiff asserts both negligence and civil rights claims concerning his COVID-19 infection. Plaintiff seeks over $4,000,000 in compensatory and punitive damages. Commissioner Deml opposes this action on and has filed a motion to dismiss and a cross motion for summary judgment. Plaintiff has filed at least three motions for summary judgment that raise nearly the same facts and issues in each version.

Based on the analysis below, Commissioner Deml's motions to dismiss and for summary judgment are **Granted**. Plaintiff Burke's multiple motions for summary judgment are **Denied.** Commissioner Deml's Motion to Strike is **Denied as moot** in light of the Court's ruling.

---

[1] As discussed below, Plaintiff's complaint does not specify what policies and actions are to blame and whether such policies and actions were the responsibility of TCCF or Commissioner Deml.

## Background Facts and Undisputed Material Facts

For purposes of the present motions, the Court understands the following facts to be established. Plaintiff Burke is currently incarcerated by the State of Vermont, under the custody and control of the Vermont Department of Correction of which Defendant Nicholas Deml is the titular head. Plaintiff is presently housed at the TCCF in Tutwiler, Mississippi that is operated, staffed, and administered by the third-party CoreCivic, Inc. Vermont inmates are sent to TCCF by virtue of an interstate agreement where the Vermont Department of Corrections contracts with other states and correction facility to house and care for Vermont inmates. 28 V.S.A. §§ 1601–1610.

The State of Vermont sent Plaintiff Burke to TCCF in October 2018, and he was continuously housed at TCCF from that point through the present. As of the date of this Decision, Plaintiff continues to be incarcerated at TCCF. Plaintiff's tenure in the facility includes the periods between March of 2020 and December of 2022 when the COVID-19 virus spread throughout the United States and the world. The Court takes judicial notice that the spread of this virus during that time left few places unaffected or untouched.

Like the rest of the world, Plaintiff alleges that he was COVID-free at the outset of the pandemic in early 2020 and remained COVID-free up and until he received a testing result in August of 2020 (from a July 2020 test) that indicated he had caught the virus. Plaintiff further claims that he did not test negative for COVID until August 15, 2022. While Plaintiff claims that he was injured during this time that he carried the virus, he does not make any allegation or state any facts about the nature of his injuries or detail what injuries he sustained, apart from carrying the virus.[2] Plaintiff has also made no claims about the standard of care that he received at TCCF after contracting the virus, and he has filed no certificate of merit that would be required to accompany a claim of substandard care. 28 V.S.A. § 801 (setting out the Department's standard of medical care); see also 12 V.S.A. § 1042 (requiring a certificate of merit for any personal injury case resulting from a claim of negligence against a health care provider).

---

[2] To this end, nothing in Plaintiff's complaint or filings allege anything about the quality of medical care he received during his infection. His complaint and filings focus on the issue of exposure and infection with the virus, and the Court will not examine issues that have not been pled or properly raised. *Amy's Enterprises v. Sorrell*, 174 Vt. 623, 625 (2002).

Plaintiff's filings rely a great deal on bald assertions and characterization. They contain several legal statements and assertions.

Plaintiff asserts that he contracted COVID within the Mississippi facility, and the affidavit provided does establish for the purposes of the present motion some evidence to support his contention and show that he tested positive for the disease in the summer of 2020. Plaintiff's assertion that he continued to have COVID until 2022 is less well-documented or supported. It relies only on his statement, but for purposes of the present motion, the Court will presume that Plaintiff Burke contracted COVID in July 2020 and continued to have the virus in some form or another until August of 2022.

Plaintiff further claims that guards and other employees of the facility came to work knowing that they had COVID. This statement lacks any evidentiary support or basis. There is no evidence that TCCF staff acted or failed to act in a particular manner or what they knew, thought, or felt, which would not be within Plaintiff's personal knowledge. Plaintiff further alleges that these employees caused inmates, like Plaintiff, to be infected. Again, this is a statement without support or evidence. Finally, Plaintiff alleges that TCCF, and the State of Vermont by extension, failed to adopt more robust protocols and failed to enforce existing protocols. In doing so, Plaintiff neither cites to COVID protocols in place in July 2020 when he apparently contracted the virus, nor to any particular standard or measure against which these standards should be adjudged.

It is not clear from Plaintiff's pleadings what actions Defendants failed to take or what protocols Defendants adopted or failed to adopt. The Court has not found, either in Plaintiff Burke's complaint or in any of his filings, any specific allegations that would detail what specific lapses or failures occurred or what policies were not adopted that would have prevented him from contracting the widespread and easily contracted virus.

Plaintiff Burke did not file any grievances during the period where the TCCF staff was managing the facility and dealing with COVID-19 protocols. Burke filed his first grievance about COVID-19 exposure in March of 2023—nearly three years after he claims to have first contracted COVID and nearly a year after he tested negative. He filed the present complaint shortly thereafter.

Plaintiff originally filed his complaint as an appeal under V.R.C.P. 75, a position he repeats in various filings, but he also stated from the outset various claims that fall under either negligence or a private civil rights action under 42 U.S.C. § 1983. Plaintiff also seeks monetary damages, which are

unavailable under a Rule 75 appeal but would be part of either a negligence or civil rights action. Finally, Plaintiff's focus on injunctive relief is limited, and the bulk of his filings are concerned with establishing the Defendants' liability for the allegations of harm that he claims to have incurred between 2020 and 2022.

## Standard of Review

The appropriate standard of review in this matter is somewhat complicated. Plaintiff has filed at least three motions for summary judgment under V.R.C.P. 56. By doing so, Plaintiff has repeatedly stated that he believes there is no dispute of material fact and that he is entitled to judgment as a matter of law. V.R.C.P. 56(a). The court may enter summary judgment when, "after adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an element essential to [his or] her case and upon which [he or] she has the burden of proof." *Gallipo v. City of Rutland*, 2005 VT 83, ¶ 13 (quotation marks omitted).

When determining whether there is a disputed issue of material fact, a court must afford the party opposing summary judgment the benefit of all reasonable doubts and inferences. *Carr v. Peerless Insurance Co.,* 168 Vt. 465, 476 (1998). However, a non-moving party cannot rely on bare allegations, unsupported generalities, or speculation to defeat a properly supported motion for summary judgment. See V.R.C.P. 56(c), (e); *Webb v. Leclair*, 2007 VT 65, ¶ 14 (mem.). "[C]onclusory allegations without facts to support them are insufficient to survive summary judgment." *Robertson v. Mylan Laboratories, Inc.*, 2004 VT 15, ¶ 48. Thus, either party's allegations must be supported by affidavits or other documentary materials which show specific facts sufficient to justify submitting his or her claims to a factfinder. See *Robertson*, 2004 VT 15, ¶ 15; *Samplid Enterprises, Inc. v. First Vermont Bank*, 165 Vt. 22, 25 (1996).

Defendants have also filed a motion to dismiss. Normally, a motion to dismiss is reviewed on the pleadings and with a much more limited basis. *Colby v. Umbrella Inc.*, 2008 VT 20, ¶ 5. Under Rule 12(b)(6), however, the Court can treat a motion to dismiss as akin to a motion for summary judgment. "If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

In this case, the parties' filings have gone well beyond the original pleadings, and both sides have presented motions, affidavits, and supporting documents in which they seek to characterize the nature of the material facts of this case. Plaintiff has filed two separate statements of undisputed material fact and has referred to information beyond the pleadings in his numerous filings. Defendant Deml has filed a response to these statements and has submitted supporting evidence demonstrating what he understands the evidence to show. Given that Plaintiff has also treated the Defendant's motions like motions for summary judgment and has responded to them with his own motions in support of his primary motion for summary judgment, the Court will treat both Plaintiff's motion and Defendant's response effectively as motions for summary judgment. *Hemond v. Frontier Communications of America, Inc.*, 2015 VT 67, ¶ 22.

This standard of review is applicable for the following reasons.

First, the parties have had over a year to conduct discovery and the develop their case. It appears from his multiple and repeated motions that Plaintiff is neither interested in further discovery, nor looking to develop an additional record of the TCCF's practices and procedures to test the sufficiency of his factual and legal case.

Second, Plaintiff has filed multiple motions for summary judgment, and he has stated that he believes he has sufficient evidence to support his statement of material facts. To the extent that the State has filed both a motion to dismiss and a cross-motion for summary judgment, it has responded to Plaintiff's filings and factual statements in a manner that the Court finds sufficient to review the questions raised in Plaintiff's motions at this time.

Third, the facts in this case, particularly as framed by Plaintiff, are limited and are particularly susceptible to review under the motion for summary judgment standard.

Fourth, the primary factual issue is whether Plaintiff has provided sufficient factual support for his claims. The Defendants' primary contention is that he has not. Under both a summary judgment and motion to dismiss standard, the Court must look beyond bald assertions, subjective characterizations, or legal conclusions to determine if there is sufficient factual basis. *Mello v. Cohen*, 168 Vt. 639, 641 (1988) (mem.); see also *Bock v. Gold*, 2008 VT 81, ¶ 15 ("By refusing to accept 'bald assertions, unsupportable conclusions, and opprobrious epithets,' the Court is not applying a heightened pleading standard; it is merely adhering to the notice pleading requirements set forth in Rule 8(a).") (Skoglund, J. concurring). The primary difference is while there is an affirmative

obligation to move beyond bald assertions in a motion for summary judgment, a party must also present sufficient facts to make out a prima facie case to survive a motion to dismiss. Compare *Boyd v. State*, 2022 VT 12, ¶ 28 (holding that a party must put forward admissible evidence to support the allegations in the complaint), with *DM Research, Inc. v. Coll. Of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) (affirming a trial court's authority to look past bald assertions and subjective characterizations to determine if there is a sufficient claim).

## Legal Analysis

### I. Proper Parties

Plaintiff is less than precise in allocating which claims are attributable to which Defendants and in which capacity the various defendants are named. In his original complaint Plaintiff listed Nick Deml, Commissioner, Vermont Department of Corrections, and "Mr. Rosa, Superintendent, TCCF, Tutwiler, MS" as the only defendants. In later filings, Plaintiff expanded the caption to include both Commissioner Deml as well as "State of Vermont, et al. in their individual & official capacitys [sic]." This is further amended to include the phrase "at all times." To date, there has been only one waiver and return of service in this case, which is Commissioner Deml's.

While it is uncontested that the Department of Corrections has contracted with CoreCivic, Inc. and TCCF to house Vermont inmates, it is also uncontested that TCCF and its staff are not employees of the State of Vermont or part of the Vermont Department of Corrections. While the contractual nature of the relationship between the two parties may translate to shared liability or responsibility, it does not unify them into a single party. See, e.g., *Pittstown Beagle Club v. Hale Mountain Fish & Game Club, Inc.*, 2006 WL 6047596 (Jun. 8, 20026) (Wesley, J.) (parties maintained separate identity despite forming a contractual relationship). As such, TCCF and its staff, including Superintendent Rosa have not been served and have not been properly joined as parties to the present action. They are **Dismissed** from this action in accordance with Rules 12(b)(4) and (5). *Messier v. Bushman*, 2018 VT 93, ¶ 10.

In the same respect, the State of Vermont has never been served or named as a party in this case apart from post-complaint filings that added the State as a defendant without amending the complaint or officially adding the State as a formal defendant. Based on this lack of process and service, the State of Vermont is also **Dismissed** as a party to the present case under Rules 12(b)(4) and (5).

This leaves Commissioner Deml as the sole defendant. While Plaintiff Burke was not clear in his original pleading if he intended to name Commissioner Deml in his official capacity or his individual capacity, the Court will accept the clarification offered in Plaintiff's subsequent filings that he intended to name Deml as a defendant in both capacities. In this respect, the Court understands Plaintiff's claims to extend to both Commissioner Deml, as an individual, for purpose of Plaintiff's civil rights claims, and to Commissioner Deml in his official capacity for purpose of the negligence claims. *Bock v. Gold*, 2008 VT 81, ¶ 9 (noting that it is well-established law, that Section 1983 claims cannot be brought against the State or any officer in their official capacity); see also *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98–99 (1984); *Zullo v. State*, 2019 VT 1, ¶ 39.

## II. Immunity

Defendant Deml has raised two arguments concerning immunity. Before the Court can look at the issue of immunity, the Court must resolve a few preliminary issues.

Plaintiff's only possible claims against Defendant Deml are (1) a civil rights action under 42 U.S.C. § 1983 against Deml's in his individual capacity, given that there is no legal basis for a civil rights claim against a state official, and (2) a negligence claims against Deml in either his official or personal capacity.

Looking at the facts, however, there is no basis to make a claim against Deml in his individual capacity for either negligence or a Section 1983 private civil rights action. Plaintiff's complaint does not identify any action that Deml, as an individual, even one acting under the color of law, personally took against Plaintiff. The sole connection that Deml has to the present matter is that he is the current Commissioner of the Vermont Department of Corrections and has been in this position during a portion of the time that Plaintiff has been incarcerated. But even this connection is insufficient as Deml was not Commissioner of the Vermont Department of Corrections during 2020 when Plaintiff became exposed to and contracted the COVID virus.[3] Deml was appointed nearly a year after these events, and therefore, he cannot, as a matter of act and

---

[3] Deml was appointed Commissioner and joined the Vermont Department of Corrections in October of 2021, over a year after Plaintiff Burke contracted COVID. Press Release, Office of the Governor, Governor Phil Scott Appoints Nick Deml Commissioner of the Department of Corrections (Oct. 8, 2021), at https://doc.vermont.gov/press-release/governor-phil-scott-appoints-nick-deml-commissioner-department-corrections. The Court takes judicial notice of this hire date under V.R.E. 201 as it is both generally known and capable of accurate and ready determination. V.R.E. 201(b) and (c).

of law have acted in an individual capacity in any way that would have led to Plaintiff contracting COVID in July of 2020.

Given that Deml lacks any personal connection to either Plaintiff or the situation leading up to Plaintiff's COVID exposure, there can be no claim against him as an individual. *Colby v. Umbrella*, 2008 VT 20, ¶ 7 ("To fulfill the state-actor requirement under § 1983, the claimant must demonstrate 'personal involvement' of the defendant in the alleged constitutional violations.") (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir.1991)); see also *Spavone v. N.Y. State Dep't Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (internal quotations omitted) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (ruling that respondeat superior claims are not permitted for Section 1983 claims). This extends to the issue of negligence given that there is no fact that would support an allegation that Deml either participated in, oversaw, or had any role in the alleged negligence of exposing Plaintiff to COVID.

Based on this, Defendant's motion to dismiss is **Granted** for any claims against Defendant Deml under Section 1983 and for any claims against Defendant Deml in his individual capacity.

This leaves only the claim of negligence against Commissioner Deml in his official capacity. In this respect, Plaintiff's sole remaining claim is that the Department of Corrections, by and through its titular head, failed to either exercise proper oversight or implementation of COVID protocols or failed to take reasonable steps to protect Plaintiff Burke. This claim is barred by official immunity. *Levinsky v. Diamond*, 151 Vt. 178, 183–85 (1990), *overruled on other grounds by Muzzy v. State*, 155 Vt. 279 (1990) (finding that the Commissioner of a department enjoyed absolute official immunity from claims). This type of immunity is different from qualified immunity, which lower-level state employees are entitled to claim. Qualified immunity involves both a test and balancing between the nature of the decision, whether it was made in good faith, and the scope of the employment. *Murray v. White*, 155 Vt. 621, 627 (1991). It is a fact-specific inquiry. Id.

Absolute immunity, by contrast, applies if the officer is a high ranking official, and that acts were performed pursuant to his or her scope of office. If both are true, then the absolute official immunity applies, and the officer is immune from suit and liability. *LaShay v. Department of Social and Rehabilitation Services*, 160 Vt. 60, 64 (1993) (noting that the state's highest executive officers acting within their authority enjoy absolute immunity from Vermont common law claims). Absolute

immunity means that the claim cannot be prosecuted against the Officer, and no determination of the merits arises. *O'Connor v. Donovan*, 2012 VT 27, ¶ 191 Vt. 412, 422 (2012).

In this case, any negligence claims against Commissioner Deml arise from his official position as Commissioner and his task to oversee and monitor Vermont inmates housed out of state and to work with those out of state partners to ensure the provisions and protections contained in the parties' interstate housing agreement are in place. As such, absolute official immunity applies, and any negligence claims against Commissioner Deml must be dismissed as a matter of law under the doctrine of absolute official immunity. Defendant Deml's motion to dismiss is **Granted** for the remaining common-law negligence claims made by Plaintiff against Commissioner Deml in his official capacity.

### III. Defendants' Duty of Care

While the previous section is sufficient to establish that Defendant Deml is entitled to dismissal of all claims pending in this action, the Court is compelled to address two defects with the underlying claims. This is, in part, because Plaintiff has sought to characterize his claims as both gross negligence and having public safety qualities that would exempt them from the immunity analysis above. While the Court finds no evidence or substantiated allegation that would, support a claim of gross negligence or other heightened liability, the Court finds it appropriate to analysis the substance of the underlying claims. For that purpose, the following analysis applies to the Plaintiff's claims and will briefly address two areas that Defendant has identified as insufficient and to which the Court has reviewed.

Defendant Deml argues that Plaintiff Burke has failed to make out the basic legal elements to support a prima facie claim under either 42 U.S.C. § 1983 or Plaintiff's common law negligence claims. The Court agrees.

There are two flaws with Plaintiff's claim. First, Plaintiff alleges that the Defendant had a constitutional and common law duty to keep him free from a COVID infection. Plaintiff cites to several cases in which a Court has found that prison facilities have a duty to protect or keep an inmate safe from harm when the custodial relationship increases an inmate's vulnerability to harm. E.g., *Billado v. Parry*, 937 F. Supp. 337, 342–43 (D.Vt. 1996) (discussing the duty of a police officer to prevent a second assault perpetrated on an individual in custody when the custody prevents the individual from fleeing the fight or engaging fully in self-defense). Plaintiff also cites to cases where

courts have discussed the impact of COVID in the context of other issues. *United States v. Rodriquez*, 451 F. Supp.3d 392, 394 (E.D. Pa. 2020) (discussing the early impacts of COVID on society in the context of a compassionate release petition). None of these cases, however, stand for the central proposition that Plaintiff seeks to assert, namely that Defendant had an affirmative duty to prevent Plaintiff from contracting COVID. The Court has not found a case that would stand for such a proposition.

Nor has Plaintiff's pleadings indicated a specific defect or fault in TCCF's policies and protocols around COVID. Plaintiff makes several allegations against TCCF staff suggesting that they purposefully came to work with COVID, but there is no evidence or support for this bald contention. Nor is there proof that TCCF's policies or protocols were deficient or inherently flawed. In fact, there is little to no mention of what protocols TCCF had in place. TCCF is not a guarantor of Plaintiff's health. Inmates who are incarcerated are exposed to other inmates, and it is self-evident that such exposure is likely to include the transmission of diseases as it would among any human population in close contact. Nor is it sufficient for Plaintiff to effectively argue for strict liability by relying on the undisputed fact that he contracted COVID within TCCF when he was under the custody, care, and control of TCCF staff. Strict liability is neither the standard for negligence, nor civil rights violations. The absence of this information is particularly important when the sole defendant is neither the staff who allegedly acted inappropriately, nor the facility management who directly oversees the employee, but is, rather, the official who monitors the overall practices and procedures from another state and who has limited powers under the housing contract to provide any oversight or management input.

While case law like *Billado* may suggest that correctional facilities owe inmates a heightened duty of care to take steps from contracting illnesses or injuries based on the fact that the facilities keep inmates in a single, confined area, and require interactions with others, this alone does not answer the specific questions of the present case, which involve defining the specific duty of care that TCCF owed Plaintiff and how TCCF breached that duty of case. In this case, the question is really one for expert testimony. *Wlkins v. Lamoille County Mental Health Services, Inc.*, 2005 VT 121, ¶ 16 (noting that it is the general rule that expert testimony is necessary to establish the standard of care in a medical or public health case). Plaintiff has not retained, disclosed, or offered an expert opinion. Without such an opinion or standard, his case has a fatal flaw, and he cannot establish the duty of care necessary to move his case forward.

For these reasons, Plaintiff's motion for summary judgment is **Denied**, and the Defendant Deml's cross motion is **Granted.**

### IV. Plaintiff's Lack of Proof of Proximate Cause

In addition to the issue of duty of care, Plaintiff's filings also lack sufficient evidence to carry his burden on the necessary element of proximate cause.[4] Plaintiff's filings do not lay out a chain of causation leading from Defendant Deml's alleged breach of a duty of care to Plaintiff's illness. This absence suggests that Plaintiff may be pursuing a theory of *res ipsa loquitur*. This doctrine states that "there is a certain class of events which, when established, raise an inference that an injury caused thereby was the result of negligence." *Marsigli v. C.W. Averill Co.*, 123 Vt. 234, 236 (1962). But to get to such an analysis, there must be evidence that there was a legal duty owed to the plaintiff by the defendant and that defendant failed to exercise certain degree of care. Id. As noted above, Plaintiff has not produced sufficient evidence to either establish TCCF's duty of care or how TCCF fell below such a duty of care.

There are also substantial questions about how Plaintiff contracted COVID. Plaintiff claims that he caught the illness from a TCCF staff member, but there is no evidence or proof offered beyond Plaintiff's unsupported contentions. Given the viral nature of COVID, it is equally possible that Plaintiff caught COVID from another inmate who may have contracted it from any variety of sources. It is also equally possible on the evidence before the Court that Plaintiff contracted COVID from an asymptomatic individual who would not have been screened or removed from the population even under strict protocols. Plaintiff's pleadings do not remove these possibilities or demonstrate that his theory of how he contracted is any more probable than any other plausible possibility, which would render the application of *res ipsa loquitur* inappropriate. Id.

This lack of evidence or proof also goes to Plaintiff's larger burden of proof and whether he could ever establish that the illness he suffered was caused by either TCCF staff or by any action, or failure to take action, on their part. *Travelers Ins. Companies v. Dermarle, Inc., USA*, 2005 VT 53, ¶¶ 3–

---

[4] While the duty of care issue is applicable to both Plaintiff's negligence and civil rights claims, it is primarily focused on Plaintiff's negligence claims. The issue of causation, though, is applicable to both Plaintiff's negligence and civil rights claims as both claims require proof that the alleged behaviors caused the injury. See *Gallipo*, 2005 VT 83, at ¶ 15 (causation is a necessary element in civil rights claim); *Rivers v. State*, 133 Vt. 11, 14 (1974) ("The law of proximate cause calls for a causal connection between the act for which the defendant is claimed to be responsible and which is alleged to be negligent and the resulting flow of injurious consequences.").

6, 10 (mem.).  As the Vermont Supreme Court notes in *Travelers*, a party seeking summary judgment on a claim must include a **concise** statement of disputed material facts supported by affidavits based on **personal knowledge** setting forth facts that would be admissible in evidence and that this evidence must, for purposes of summary judgment, establish a preponderance and not a mere possibility.  If the evidence cannot demonstrate more than a mere possibility, then Plaintiff's case must fail as a matter of law.  Id.[5]

Plaintiff's claims ultimately fail as a matter of law on the issue of causation because he lacks any expert testimony to explain either the chain of causation that led him to contract the illness, or as noted above, the standard of care that TCCF owed him.  In a case like this where the questions involve medical and public health standards, the Court has consistently required an expert witness to explain the causative chain as well as the standard of care.  *Merrill v. University of Vermont*, 133 Vt. 101, 104 (1974) ("Generally, expert medical testimony is required to support a finding of causation where the link is 'obscure and abstruse' such that a layperson 'can have no well-founded knowledge and can do no more than indulge in mere speculation.'").

The absence of an expert or even the citation to any specific standard or reference that would establish how Plaintiff contracted his illness, is fatal to his claim.  Plaintiff cannot, as a matter of law, establish the necessary proof to link his illness to any action or omission by TCCF staff, and by extension, the other defendants in this case.  Without such proof, Plaintiff's claim cannot advance.  For these reasons, Plaintiff's motion for summary judgment is **Denied.**  Defendant Deml's cross motion for summary judgment is **Granted.**

---

[5] The facts of *Travelers* are instructive to this case.  In that case a bakery alleged that a series of silicon baking sheets were defective because they were shedding silicon fibers before the end of their lifespan.  The bakery, however, could not prove that this was more than a possibility because its system did not keep track of the number of bakes each mat had, and there was a mixture of old and new sheets in production.  Id. at ¶ 2.  The bakery had destroyed all of the mats, which left no direct evidence or ability to identify the age of the offending matts.  While there was a feeling that the newer mats were shedding fibers into the products sooner than older mats, there was no evidence to establish this beyond a possibility.  Id.  Similarly in this case, Plaintiff may feel that he caught COVID from a TCCF staff and may feel that the staff member knew he or she had COVID, there is no evidence to make this anything more than a possibility.

## ORDER

Based on the foregoing analysis, the Court makes the following rulings. First, Superintendent Rosa and the TCCF staff were never served or joined to the present matter, and they are **Dismissed** as a matter of law under V.R.C.P. 12(b)(4) and (5).

Second, the State of Vermont was never joined or served as a party to the present matter, and it is entitled to be dismissed from the present matter. Therefore, the State of Vermont is **Dismissed** as a matter of law under V.R.C.P. 12(b)(4) and (5).

Third, Defendant Deml's motion to dismiss and cross motion for summary judgment are **Granted**, and the present matter is **Dismissed** as a matter of undisputed fact and as a matter of law for the reasons listed above.

Fourth, Plaintiff Burke's various motions for summary judgment are **Denied.**

Fifth, the Defendant Deml's motion to strike is **Denied as moot** in light of the Court's rulings and resolution of the underlying claims, and the Court has reviewed all motions and supporting documents filed by Plaintiff in this matter.

Electronically signed on 7/26/2024 2:26 AM pursuant to V.R.E.F. 9(d)

_____

Daniel Richardson
Superior Court Judge